UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

MICHAEL WARREN and EVELYN WARREN,  x

              Plaintiffs,  x

    -against-  x

  x

THE CITY OF NEW YORK, a municipal entity;
NEW YORK CITY POLICE COMMISSIONER  x
RAYMOND KELLY; NEW YORK CITY
POLICE SERGEANT STEVEN TALVY  x
(Shield No. 5408); NEW YORK CITY POLICE
OFFICER JOSEPH TILLOTSON  x
(Shield No. 30215); NEW YORK CITY POLICE
OFFICER JOHN ACCONI (Shield No. 5075);  x
NEW YORK CITY POLICE OFFICER
MIRABEL SARANTE (Shield No. 10211),  x
NEW YORK CITY POLICE OFFICER
ANTHONY CAROZZA (Shield No. 16222),  x
individually and in their official capacities; and
JOHN DOES 1-10, New York City Police  x
Officers, Supervisors and/or Commanders,
individually and in their official capacities,  x

            Defendants.  x

-------------------------------------------------------------- x

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

08-CV-3815 (ARR) (RER)

ECF Case

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the plaintiffs, MICHAEL WARREN

and EVELYN WARREN, seek relief for defendants' violation, under color of state law, of their

rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the

First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the

Constitution and laws of the State of New York, on or about June 21, 2007.

2.    Defendants, THE CITY OF NEW YORK, a municipal entity; NEW

YORK CITY POLICE COMMISSIONER RAYMOND KELLY; NEW YORK CITY POLICE

SERGEANT STEVEN TALVY (Shield No. 5408); NEW YORK CITY POLICE OFFICER

JOSEPH TILLOTSON (Shield No. 30215); NEW YORK CITY POLICE OFFICER JOHN

ACCONI (Shield No. 5075); NEW YORK CITY POLICE OFFICER MIRABEL SARANTE

(Shield No. 10211), NEW YORK CITY POLICE OFFICER ANTHONY CAROZZA (Shield

No. 16222) and JOHN DOES New York City Police Officers, Supervisors and/or Commanders,

the exact number which is unknown at this time,  acting individually and in their official

capacities, jointly and severally, did cause plaintiffs MICHAEL WARREN and EVELYN

WARREN, to be subject to, *inter alia*, excessive and unreasonable force, false arrest and

imprisonment and malicious prosecution causing them serious physical and mental injury.

3.      Plaintiffs seek compensatory and punitive damages, declaratory relief, an

award of attorney fees and costs, and such other and further relief as the Court deems proper.

**JURISDICTION**

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and

1343 (3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and

civil rights.

5.      Plaintiffs' claim for declaratory relief is authorized by 28 §§ 2201

and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6.      Plaintiffs further invoke this Court's supplemental jurisdiction,

pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are

so related to the claims within the original jurisdiction of this Court that they form part of the

same case or controversy.

## VENUE

7.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b)(2) because this is the judicial district in which the events giving rise to plaintiffs' claims occurred.

## JURY DEMAND

8.      Plaintiffs demand trial by jury in this action on each and every one of their claims.

## PARTIES

9.      Plaintiff, MICHAEL WARREN, is a citizen of the United States, and is and was at all times relevant to this complaint a resident of the City of New York, County of Kings, State of New York.

10.     Plaintiff, EVELYN WARREN, is a citizen of the United States, and is and was at all times relevant to this complaint a resident of the City of New York, County of Kings, State of New York.

11.     Defendant CITY OF NEW YORK ("the CITY") is a municipal entity created and authorized under the laws of the State of New York. The CITY is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

12.     Defendant RAYMOND KELLY, is and was, at all times relevant to this complaint, Commissioner of the New York City Police Department ("NYPD") and a final policy maker for purposes of the NYPD's policies, practices and customs.

3

13.     Defendant STEVEN TALVY (Shield No. 5408), is or was, at all times relevant to this complaint, a sergeant employed by the NYPD in the Street Narcotics Enforcement Unit ("SNEU").

14.     Defendant JOSEPH TILLOTSON, Shield No. 30215, is or was at all times relevant to this complaint, a police officer employed by the NYPD in the SNEU.

15.     Defendant JOHN ACCONI, Shield No. 5075, is or was at all times relevant to this complaint, a police officer employed by the NYPD in the SNEU.

16.     Defendant MIRABEL SARANTE, Shield No. 10211, is or was at all times relevant to this complaint, a police officer employed by the NYPD in the SNEU.

17.     Defendant ANTHONY CAROZZA, Shield No. 16222, is or was at all times relevant to this complaint, a police officer employed by the NYPD in the SNEU.

18.     Defendants JOHN DOES, are, or were at all times relevant to this complaint, NYPD police officers, supervisors, and/or commanders assigned, upon information and belief, to the SNEU.  These JOHN DOE defendants include individuals who assisted and/or conspired to and/or acted in concert and/or did engage in the violation's of plaintiffs' rights described herein, or who failed to protect the plaintiffs from violations of their constitutional rights.

19.     Defendants RAYMOND KELLY, STEVEN TALVY, JOSEPH TILLOTSON, JOHN ACCONI, MIRABEL SARANTE, ANTHONY CAROZZA and JOHN DOES (collectively, "the individual defendants") are, or at all times relevant to the complaint, were, employees, agents, servants, and/or officers of defendant CITY OF NEW YORK and/or the NYPD.

4

20.    At all times relevant herein, each of the individual defendants acted under color of law in the course and scope of his or her duties and functions as an agent, employee, servant and/or officer of the CITY and/or NYPD in engaging in the conduct described herein.

21.    At all times relevant herein, the individual defendants have acted for and on behalf of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as officers, agents, employees, and/or servants of the CITY and/or NYPD.

22.    At all times relevant herein, the individual defendants violated clearly established constitutional standards under the First, Fourth, Fifth and Fourteenth Amendments of which a reasonable police officer and/or public official under his or her respective circumstances would have known.

## COMPLIANCE WITH GENERAL MUNICIPAL LAW

23.    Plaintiffs served notices of claim upon defendant CITY OF NEW YORK within 90 days of the events giving rise to plaintiffs' claims and have otherwise complied with the statutory requirements of the General Municipal Law of the State of New York.

24.    Although more than 30 days have elapsed since service of the notices of claim, defendant CITY OF NEW YORK has neglected to adjust or pay such claims.

25.    This action is being filed within a year and 90 days of the events giving rise to plaintiffs' claims.

## STATEMENT OF FACTS

26.    Plaintiffs MICHAEL WARREN and EVELYN WARREN, both African American, have been married for 20 years.  Both plaintiffs are attorneys whose practices include

5

§ 1983 police misconduct cases.

27.     On the early evening of June 21, 2007, plaintiffs were driving from their home in Brooklyn to a legal meeting in Manhattan.

28.     Traveling on Vanderbilt Avenue, plaintiffs stopped for a red light between Atlantic Avenue and Pacific Street where a McDonald's restaurant was located to the right of their vehicle.

29.     While stopped, plaintiffs observed a young male, later identified as Freddy Moody a/k/a Freddy Martinez, running through the parking lot of the McDonald's restaurant toward Vanderbilt Avenue being pursued by a number of police officers, all later identified as officers assigned to the SNEU.

30.     The officers tackled Mr. Moody in the street of Vanderbilt Avenue, in front of plaintiffs' stopped vehicle.

31.     The officers cuffed Mr. Moody behind his back while he was face down in the street.

32.     One of the officers, later identified as defendant Sergeant STEVEN TALVY, kicked Mr. Moody while he was laying face down, handcuffed.

33.     Defendant TALVY then stepped back and watched, with his hand resting intermittently on his gun holster, while the other officers involved in the arrest, including defendant officers JOHN ACCONI, JOSEPH TILLOTSON and JOHN DOES, repeatedly kicked and stomped Mr. Moody as he continued to lie handcuffed in the street.

34.     Plaintiffs MICHAEL WARREN and EVELYN WARREN both exited their vehicle.

35.     Without leaving the periphery of their vehicle, plaintiffs protested the force being used against Mr. Moody, in words or substance asking why the police were kicking him and asking them to stop.

36.     One or more officers stated, "He's got a gun," as they proceeded to pull out the contents of Mr. Moody's pockets, which did not include any firearm or weapon.

37.     Several officers, including defendant TALVY, replied to the plaintiffs, in words or substance, that it was none of their "fucking business" and to get back in their vehicle.

38.     The plaintiffs got back into their vehicle.

39.     From inside the vehicle, the plaintiffs continued to observe the brutality being visited upon Mr. Moody, and proceeded to write down the license plate number of a police vehicle at the scene.

40.     At that point, defendant TALVY approached the front passenger side of the vehicle, where plaintiff EVELYN WARREN was seated, and asked plaintiffs, in words or substance, "who the fuck" were they? and "what the fuck" did they think they were doing?

41.     Plaintiffs identified themselves as attorneys, stating, in words or substance, that they had a right to object to the injustice they were witnessing against Mr. Moody.

42.     Defendant TALVY responded, in words or substance, "I don't care who the fuck you are.  You need to mind your fucking business."

43.     TALVY then came around to the front driver's side of the vehicle, where plaintiff MICHAEL WARREN was seated.

44.     Without any justification whatsoever, defendant TALVY began punching plaintiff MICHAEL WARREN repeatedly in the face through the open vehicle window while

7

saying, in words or substance, "Get out of the vehicle."

45.     Plaintiff EVELYN WARREN reached her hand out across her husband, stating to defendant TALVY, in words or substance, "Stop. Why are you doing this?"

46.     Without any justification whatsoever, defendant TALVY punched EVELYN WARREN in the jaw with his closed fist.

47.     Defendant TALVY then opened the driver's door of plaintiffs' vehicle and physically removed plaintiff MICHAEL WARREN from the vehicle.

48.     TALVY did so with such force that it tore open MICHAEL WARREN's dress shirt and ripped nearly the entire length of the left pant leg of plaintiff's suit.

49.     Plaintiff MICHAEL WARREN's fountain pen was also taken during his arrest and never returned and his sunglasses were broken.

50.     Defendant TALVY handcuffed plaintiff MICHAEL WARREN and after he was cuffed, punched him in the right side of the head.

51.     Defendant TALVY then walked plaintiff through the McDonald's parking lot toward a police wagon.

52.     At no time prior to being assaulted by defendant TALVY had plaintiffs MICHAEL and EVELYN WARREN been engaging in any unlawful, wrongful or disorderly conduct.

53.     At no time did plaintiffs obstruct any police function, resist arrest or engage in any conduct that could reasonably be construed as endangering or threatening any police officer or other individual.

54.     The use of force by defendant TALVY against plaintiffs MICHAEL and

8

EVELYN WARREN was objectively unreasonable in light of the circumstances then and there prevailing, and as such constituted excessive force against plaintiffs' persons, causing them injury.

55. As plaintiff MICHAEL WARREN was being led away in handcuffs, he asked plaintiff EVELYN WARREN, who was following behind him, to stay with their vehicle.

56. EVELYN WARREN spoke to several witnesses at the scene who commented on the condition of her jaw.

57. She placed a brief call to 911.

58. Plaintiff EVELYN WARREN asked the officers, including defendant TALVY, if she could take her vehicle.

59. In response, Defendant TALVY asked plaintiff for her driver's license which she gave to him.

60. TALVY handed plaintiff's driver's license to defendant Officer MIRABEL SARANTE.

61. TALVY stated to plaintiff, in words or substance, that she should have minded her own business.

62. Plaintiff responded, in words or substance, that defendant TALVY and his officers should not have employed excessive force against Mr. Moody.

63. Defendant TALVY replied, in words or substance, "It's your word against my word. Let's see what happens."

64. Meanwhile, defendant SARANTE was writing down information from plaintiff's driver's license.

65.     When plaintiff EVELYN WARREN asked why SARANTE was writing down information from plaintiff's license, SARANTE replied because defendant TALVY had told her to.

66.     Plaintiff asked defendant TALVY if he was going to let her take her vehicle. He stated, "No."

67.     Plaintiff asked SARANTE for her license back and reached to take it from SARANTE's hand.

68.     SARANTE moved her hand out of plaintiff's reach.

69.     As plaintiff was walking away from defendant SARANTE, plaintiff heard defendant TALVY say, in words or substance, "She tried to take her driver's license."

70.     Plaintiff heard defendant SARANTE say, in words or substance, "She scratched me."

71.     Plaintiff then heard defendant TALVY say, in words or substance, "Take her down."

72.     Onlookers observing these events stated in words or substance, "No, don't do that to her."

73.     Plaintiff EVELYN WARREN was roughly pushed against her vehicle by defendants SARANTE and CAROZZA, knocking her purse and the cell phone she was holding to the ground.

74.     Plaintiff was handcuffed by defendants SARANTE and CAROZZA and led to a police wagon, where plaintiff MICHAEL WARREN was already inside.

75.     At no time prior to plaintiff EVELYN WARREN's arrest had she been

10

engaging in any unlawful, wrongful or disorderly conduct.

76.     MICHAEL and EVELYN WARREN were transported to the 77th Precinct.

77.     Plaintiffs were both placed in a line with other arrestees at the precinct and then put into cells.

78.     One of the officers at the precinct, upon seeing plaintiff MICHAEL WARREN's ripped clothing, remarked in words or substance, "What is this, a strip show?"

79.     While at the 77th Precinct, plaintiff EVELYN WARREN asked several times to make a phone call to an attorney, but was never given the opportunity to make a call.

80.     Over 100 community members eventually came to the precinct that night in support of plaintiffs MICHAEL and EVELYN WARREN, including New York City Council Member Charles Barron and several attorneys.

81.     EVELYN WARREN was released between 10 and 11 p.m. with a summons for disorderly conduct signed by defendant Officer MIRABEL SARANTE.

82.     MICHAEL WARREN was released between 11 p.m. and midnight.

83.     Later that night, the police came to plaintiffs' home with a piece of paper indicating that MICHAEL WARREN was being charged with obstruction of governmental administration, resisting arrest and disorderly conduct.

84.     Defendant Officer JOHN ACCONI signed the criminal court complaint against MICHAEL WARREN, falsely swearing that he possessed personal knowledge of the alleged factual basis for charging plaintiff with obstruction of governmental administration in the second degree (PL 195.00) and resisting arrest (PL 205.30).

85.     MICHAEL and EVELYN WARREN were required to retain private

11

defense counsel and appeared in Kings County criminal court approximately six times in connection with the false charges against them.

86.    On July 2, 2008, all charges against MICHAEL WARREN and EVELYN WARREN were dismissed on the motion of the Kings County District Attorney for insufficient evidence.

87.    On or about August 13, 2008, the Civilian Complaint Review Board ("CCRB") substantiated charges against defendant STEVEN TALVY for use of force against plaintiff MICHAEL WARREN and discourtesy toward plaintiffs MICHAEL and EVELYN WARREN.  The CCRB has forwarded its findings to defendant Police Commissioner RAYMOND KELLY who alone has the authority to impose discipline on defendant TALVY. To date, plaintiffs are not aware of any disciplinary action that has been initiated, taken or imposed against TALVY.

88.    As a direct and proximate result of the actions and conduct of the defendants described above, plaintiffs MICHAEL WARREN and EVELYN WARREN suffered deprivation of their federal and state constitutional rights and state law rights; physical and psychological injuries; pain and suffering; emotional distress; damage to reputation; loss and damage to property; legal fees and medical and legal expenses.

## FIRST CAUSE OF ACTION
(Constitutional Violations - 42 U.S.C. § 1983)
Against TALVY, ACCONI, SARANTE and CAROZZA

89.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

12

90.     Defendants, under color of state law, subjected plaintiffs to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983 thereby depriving plaintiffs of their rights, privileges and immunities secured by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights:

A.     freedom to engage in protected speech;

B.     freedom from unreasonable seizure of their persons, including excessive force;

C.     freedom from arrest without probable cause;

D.     freedom from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, and of which wrongful detention plaintiffs were aware and to which they did not consent;

E.     freedom from the lodging of false charges against them by police officers;

F.     freedom from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiffs' favor;

G.     freedom from abuse of process;

H.     freedom from deprivation of liberty without due process of law; and

I.     equal protection, privileges and immunities under the laws.

91.     Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CAUSE OF ACTION
(Failure to Intervene - Fourth Amendment - 42 U.S.C. § 1983)
Against TILLOTSON, ACCONI, SARANTE, CAROZZA and JOHN DOES

92.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

93.     Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the police department employing unjustified and excessive force against a civilian or falsely arresting a civilian.

94.     Defendants TILLOTSON, ACCONI, SARANTE, CAROZZA and JOHN DOES were present on the evening of June 21, 2007 on Vanderbilt Avenue between Atlantic Avenue and Pacific Street and witnessed Sergeant TALVY:

    a.     reach through the driver-side window of plaintiffs' vehicle and repeatedly strike plaintiff MICHAEL WARREN in the face;

    b.     reach through the driver-side window of plaintiffs' vehicle and strike plaintiff EVELYN WARREN in the face;

    c.     remove plaintiff MICHAEL WARREN from his vehicle with such force that it ripped open Mr. WARREN's dress shirt and ripped nearly the entire length of the left pant leg of his suit;

    d.     falsely arrest plaintiff MICHAEL WARREN;

    e.     punch plaintiff MICHAEL WARREN in the right side of his head after plaintiff was handcuffed; and

    f.     order the false arrest of plaintiff EVELYN WARREN.

95.     Sergeant TALVY's use of force against plaintiffs, and particularly against plaintiff MICHAEL WARREN, was obviously excessive and unjustified under the circumstances yet defendants failed to take any action or make any effort to intervene, halt or protect plaintiffs from being physically brutalized by Sergeant TALVY.

96.     The arrests of plaintiffs MICHAEL and EVELYN WARREN were clearly without probable cause or other legal justification and in retaliation for their having protested the excessive force employed against Mr. Moody yet defendants failed to take any action or make any effort to intervene, halt or protect plaintiffs from being unlawfully and wrongfully arrested.

97.     Defendants' violation of plaintiffs' constitutional rights by failing to intervene in TALVY's clearly unconstitutional use of force and plaintiffs' unconstitutional arrests resulted in the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
(Individual Supervisory Liability - 42 U.S.C. § 1983)
Against TALVY and Supervisor JOHN DOES

98.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

99.     Individual defendants Sergeant TALVY and Supervisor JOHN DOES were, at all relevant times, supervisory personnel in the NYPD, with oversight responsibility for the training, instruction, supervision and discipline of the named and unnamed individual police officer defendants who deprived plaintiffs of their federal constitutional rights.

100.    The individual supervisory defendants knew or should have known that the

15

named and unnamed individual police officer defendants failed to intervene in Sergeant TALVY's use of clearly excessive force against plaintiffs or in the plaintiffs' clearly unlawful arrests.

101.   The individual supervisor defendants knew or should have known that the named and/or unnamed individual police officer defendants were conducting an unreasonable and retaliatory seizure and false arrest of plaintiff EVELYN WARREN, and/or were maliciously prosecuting plaintiffs MICHAEL and EVELYN WARREN, depriving them of their due process of law. Indeed, Sergeant TALVY ordered EVELYN WARREN's arrest and condoned, if not ordered, MICHAEL and EVELYN WARREN's malicious prosecution.

102.   The individual supervisor defendants were personally involved in either ordering, or failing to take preventative and remedial measures to guard against, plaintiffs' constitutional deprivations. The supervisory defendants knew, or in the exercise of due diligence, should have known that the actions taken against plaintiffs by the named and unnamed individual police officer defendants was likely to occur.

103.   The failure of the individual supervisor defendants to train, supervise and/or discipline the named and unnamed individual police officer defendants with respect to the constitutional rights of civilians amounted to gross negligence, deliberate indifference or intentional misconduct which directly and proximately caused the injuries and damages to plaintiffs set forth above.

## FOURTH CAUSE OF ACTION
(Monell Claim Against Defendants CITY and KELLY - 42 U.S.C. § 1983)

104.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

105.    All of the acts and omissions by the named and unnamed individual police officer defendants described above were carried out pursuant to overlapping policies and practices of the City of New York which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

106.    Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

107.    The actions of the individual police defendants resulted from and were taken pursuant to the following *de facto* policies and/or well-settled and widespread customs and practices of the CITY, which are implemented by members of the police department:

   a.    drug enforcement units, in this case SNEU, are encouraged by their supervisors and/or tacitly allowed by the NYPD, specifically defendant Police Commissioner KELLY, physically to brutalize suspects and arrestees without consequence - i.e., without fear of reprimand, discipline or even re-training by the Department;

   b.    NYPD officers engage in systemic and ubiquitous perjury, both oral and

17

written, to cover-up constitutional and state law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates.  They do so with the knowledge and approval of their supervisors, commanders and Police Commissioner KELLY who all:

 (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia*, in sworn testimony, official reports, in statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and

 (ii) encourage and/or fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians; and

c. the NYPD, with the knowledge, approval and encouragement of Police Commissioner KELLY, fails to properly train, supervise and/or discipline officers concerning the First Amendment rights of bystanders to observe and protest police (mis)conduct without suffering retaliatory use of force,

18

false arrest and/or malicious prosecution.

108.     The existence of the foregoing unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NYPD and the CITY, including, without limitation defendant Commissioner KELLY.

109.     Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including defendant Commissioner KELLY, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

110.     The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.

111.     The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are further evidenced, *inter alia*, by the following:

a.     The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission

19

Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [New York City Police]
> Department allowed its systems for fighting corruption virtually to collapse. It
> has become more concerned about the bad publicity that corruption disclosures
> generate than the devastating consequences of corruption itself. As a result, its
> corruption controls minimized, ignored and at times concealed corruption rather
> than root it out. Such an institutional reluctance to uncover corruption is not
> surprising. No institution wants its reputation tainted – especially a Department
> that needs the public's confidence and partnership to be effective. A weak and
> poorly resourced anti-corruption apparatus minimizes the likelihood of such taint,
> embarrassment and potential harm to careers. Thus there is a strong institutional
> incentive to allow corruption efforts to fray and lose priority – which is exactly
> what this Commission uncovered. This reluctance manifested itself in every
> component of the Department's corruption controls from command accountability
> and supervision, to investigations, police culture, training and recruitment.

> For at least the past decade, the system designed to protect
> the Department from corruption minimized the likelihood of uncovering it.

Mollen Commission Report, pp. 2-3.

> b.      Accordingly, in 1990, the Office of Special Prosecutor, which investigated

charges of police corruption, was abolished.

> c.      The Mollen Commission concluded that police perjury and falsification of

official records

> is probably the most common form of police corruption facing the criminal justice system
> . . . .

> . . . Regardless of the motives behind police falsifications, what is
> particularly troublesome about this practice is that it is widely tolerated by corrupt
> and honest officers alike, as well as their supervisors. Corrupt and honest officers
> told us that their supervisors knew or should have known about falsified versions
> of searches and arrests and never questioned them.

> . . . What breeds this tolerance is a deep-rooted perception among many
> officers of all ranks within the Department that nothing is really wrong with
> compromising facts to fight crime in the real world. Simply put, despite the
> devastating consequences of police falsifications, there is a persistent belief

among many officers that it is necessary and justified, even if unlawful.  As one dedicated officer put it, police officers often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get a suspected criminal off the streets.  This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that?  They're guilty."

Mollen Commission Report, pp. 36, 40-41.

        d.      Significant evidence of perjured sworn statements systemically provided by officers to attempt to cover-up or justify unlawful mass arrests of 1800 people has been and continues to be developed in the consolidated litigation arising out of the 2004 Republican National Convention.  *See, e.g.*, Second Amended Class Action Complaint in *MacNamara, et al. v. City of New York, et al.*, 04-CV-9216 (S.D.N.Y.) at ¶¶ 73(G) - (I), 102, 107, 112, 119, 124, 129, 143, 158, etc., 228, 232, 240, 259.

        e.      New York County District Attorney Robert Morgenthau has been quoted as acknowledging that in the NYPD there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully.

        f.      In 1985, former Police Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD.

        g.      Former New York City Police Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

        h.      Regarding defendant CITY's tacit condonement and failure to supervise, discipline or provide remedial training when officers assigned to drug enforcement units engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly

21

independent from the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse of civilians. It is rare that the CCRB substantiates an allegation of police misconduct.[1] When it does, however, defendant Police Commissioner KELLY controls whether the NYPD pursues the matter and he alone has authority to impose discipline on the subject officer(s). Since 2005, during KELLY's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (*i.e.*, closed without action or discipline) spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and 30% so far in 2008. As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped so far in 2008. *See* 8/20/08 Daily News Editorial, "City leaders must get serious about policing the police."

      i.      The CCRB itself has expressed concern over the NYPD's increasing failure to discipline officers against whom complaints of abuse have been substantiated. The CCRB's 2007 status report notes that in that year the NYPD processed cases against 296 officers

---

[1]In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See* CCRB Jan.-Dec. 2007 Status Report at p. 19, available at http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted *de facto* policy and/or well-settled and widespread custom and practice in the NYPD whereby police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia*, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

whom the CCRB had found engaged in misconduct. The NYPD, under defendant Commissioner

KELLY, declined to pursue any disciplinary action against 102 of those officers (34% ),

representing a 10-fold increase from 2006 in the percentage of officers found to have committed

misconduct whom the Department chose not to discipline. Of the 172 officers that the

Department did discipline, 94 received only verbal "instructions," and only 9 received any

punishment more serious than a command discipline, compared to 49 in 2003, when the number

of substantiated CCRB complaints was about 15% higher. *See* CCRB Jan-Dec. 2007 Status

Report at p. 2, available at http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf.

        j.    Excluding the CCRB complaints stemming from the events involving

plaintiffs MICHAEL and EVELYN WARREN, a significant number of complaints have been

lodged with the CCRB and the IAB against the supervisors and officers assigned to SNEU,

including, but not limited to, the named defendants, without any Departmental action taken in

response. By way of illustration:

Sergeant STEVEN TALVY
12 CCRB complaints between August 1996 and August 2007; 7 for force or threat-of-force

Officer JOSEPH TILLOTSON
4 CCRB complaints between February 2006 and December 2006; 2 for force, one of which also
involved Sergeant Talvy

Officer JOHN ACCONI
5 CCRB complaints between January 2003 and April 2007; all 5 for force; 1 also involved
Sergeant Talvy

Officer MIRABEL SARANTE
8 CCRB complaints between February 2006 and March 2007; 2 for force
17 open allegations with IAB as of 8/30/07

Officer ANTHONY CAROZZA
4 CCRB complaints between April 2006 and December 2006; 3 for force
9 IAB investigations

       k.      Defendants TALVY, TILLOTSON and ACCONI have all been previously sued in civil rights actions alleging violation of the civilian plaintiffs' constitutional rights, including excessive use of force, all of which were settled for money damages. Upon information and belief, no disciplinary or remedial action was taken against these individual defendants as a result of these lawsuits.[2]

       l.      Any policy and/or system purportedly adopted and implemented by defendant CITY and its agency the NYPD for monitoring the conduct of members of the Police Department who have been the subject of multiple complaints of corruption or civilian abuse is, upon information and belief, unenforced and ineffectual.

       m.      The above-noted failure to properly train, supervise and/or discipline officers concerning the First Amendment rights of bystanders to observe and protest police (mis)conduct without suffering retaliatory use of force, false arrest and/or malicious prosecution is evidenced by, *inter alia*, the number of bystander cases, including this one, that plaintiff's counsel alone has handled or is handling in recent history. *See, e.g., Ghoreishian and*

---

    [2]TALVY and TILLOTSON were both defendants in *Speed v. City of New York, et al.*, 06-CV-0841 (S.D.N.Y.), which settled for $40,000. TALVY was also sued in *Taylor v. City of New York, et al.*, 05-CV-05294 (S.D.N.Y.), which settled for $9,000. ACCONI was a defendant in *Brooks, et al. v. City of New York, et al.*, 07-CV-3170 (S.D.N.Y.), which settled for $95,000. Defendants TALVY, TILLOTSON and ACCONI are all named defendants in *Moody v. City of New York, et al.*, 08-CV-2587 (E.D.N.Y.), the excessive force action filed on behalf of Freddy Moody, the young man whose beating plaintiffs protested. Finally, CAROZZA is a named defendant in *Sanders v. City of New York, et al.*, 08-CV-4996 (E.D.N.Y.) which alleges CAROZZA engaged in false arrest and excessive force, resulting in, *inter alia*, a fractured jaw, fractured elbow and dental injuries to the plaintiff.

*Dickson v. City of New York, et al.*, 08-CV-5296 (S.D.N.Y.); *Stuart, et al. v. City of New York, et al.*, 07-CV-3750 (E.D.N.Y.). *See also Holloway v. City of New York*, Index No. 012525/2003 (Sup. Ct. Kings Co.).

      n.     Upon information and belief, the above-noted failure to properly train, supervise and/or discipline officers concerning the First Amendment rights of bystanders is further evidenced by, *inter alia*, the absence of any training materials or curriculum on the issue of bystanders in the Police Academy and post-Academy trainings.

      112.     The defendant police officers herein were the subject of prior civilian and departmental complaints of misconduct (*see, e.g.*, preceding paragraph at (j) and (k)) that gave notice to, or should have given notice to defendant CITY and its agency, the NYPD, that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiffs herein.

      113.     The plaintiffs' injuries were a direct and proximate result of the defendant CITY and its agency, the NYPD's, wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

      114.     Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiffs of their rights, in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 6, 8, 11, and 12 of the Constitution of the State of New York.

      115.     The defendant CITY is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise,

train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

## FIFTH CAUSE OF ACTION
(Respondeat Superior)
Against CITY OF NEW YORK

116.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs if fully set forth herein.

117.    Defendant CITY is liable for the actions of the individual defendants under the doctrine of *respondeat superior*.

## SIXTH CAUSE OF ACTION
(New York State Constitutional Violations)
Against TALVY, ACCONI, SARANTE, CAROZZA and JOHN DOES

118.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

119.    Such conduct breached the protections guaranteed to plaintiffs by the New York State Constitution, Article I, §§ 6, 8, 11, and 12, including their rights of:

    A.    freedom to engage in protected speech;

    B.    freedom from unreasonable seizure of their persons, including excessive force;

    C.    freedom from arrest without probable cause;

    D.    freedom from false imprisonment, that being wrongful detention

26

without good faith, reasonable suspicion or legal justification, and of which wrongful detention plaintiffs are aware and to which they did not consent;

E.      freedom from the lodging of false charges against them by police officers;

F.      freedom from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiffs' favor;

G.      freedom from abuse of process;

H.      freedom from deprivation of liberty without due process of law; and

I.      equal protection, privileges and immunities under the laws.

120.    Defendants' deprivation of plaintiffs' rights under the New York State Constitution resulted in the injuries and damages set forth above.

## SEVENTH CAUSE OF ACTION
### (False Arrest)
### Against TALVY, SARANTE and CAROZZA

121.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

122.    Acting under color of law, defendants TALVY, SARANTE and CAROZZA, unlawfully caused, ordered, approved and/or knowingly failed to prevent plaintiffs' arrest without probable cause or other legal justification.

123.    The individual defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiffs' rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

## EIGHTH CAUSE OF ACTION
(False Imprisonment)
Against TALVY, SARANTE and CAROZZA

124.   Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

125.   Acting under color of law, defendants TALVY, SARANTE and CAROZZA, unlawfully caused, ordered, approved and/or knowingly failed to prevent plaintiffs' wrongful detention, thereby depriving them of their liberty without good faith, reasonable suspicion or other legal justification.

126.   Plaintiffs were conscious of, and did not consent to, their confinement.

127.   The individual defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiffs' rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

## NINTH CAUSE OF ACTION
(Malicious Prosecution)
Against TALVY, SARANTE and ACCONI

128.   Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

129.   Individual defendants TALVY, SARANTE and ACCONI, acting under color of law, commenced and continued, and/or caused to be commenced and continued, a criminal prosecution against plaintiffs that was lacking in probable cause, instituted in malice, and which

ultimately terminated in plaintiffs' favor.

130.    Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiffs' rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

## TENTH CAUSE OF ACTION
(Assault and Battery)
Against TALVY, SARANTE and CAROZZA

131.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

132.    Defendants TALVY, SARANTE and CAROZZA, without just cause, wilfully and maliciously touched plaintiffs without their authorization and used physical force on plaintiffs, causing plaintiffs to suffer physical and emotional injuries.

133.    Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiffs' rights and are therefore liable for punitive damages.

## ELEVENTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
Against TALVY

134.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

135.    Defendant TALVY, by his aforementioned acts, did intentionally, willfully, and knowingly cause plaintiffs to suffer mental and emotional distress, pain and suffering, and

damage to name and reputation.

136.    Defendant TALVY committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiffs' rights and is therefore liable for punitive damages.

## TWELFTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
Against TALVY, TILLOTSON, SARANTE, ACCONI, CAROZZA and JOHN DOES

137.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

138.    The individual defendants, by their aforementioned acts, did negligently cause plaintiffs to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

## THIRTEENTH CAUSE OF ACTION
(Negligence of the Individual Defendants)
Against TALVY, TILLOTSON, SARANTE, ACCONI, CAROZZA and JOHN DOES

139.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein. allegation above as if fully set forth herein.

140.    The individual defendants, by their aforementioned acts, negligently failed to use due care in the performance of their duties in that they, among other negligent acts:

      a.    failed to perform their duties as a reasonably prudent and careful police officer or supervisor would have done under similar circumstances; and/or

      b.    carelessly and recklessly seized and detained plaintiffs without a warrant or probable cause; and/or

c.      carelessly and recklessly failed to intervene in the unlawful use of

force against plaintiffs and unlawful arrest, detention and

prosecution.

141.    The negligent actions of the individual defendants directly and proximately

caused plaintiffs' injuries and damages set forth above.

**WHEREFORE**, plaintiffs demands the following relief jointly and severally against

all defendants:

(a)      a declaration that defendants violated the federal civil rights of plaintiffs;

(b)      compensatory damages for physical, emotional, and economic injuries

suffered by plaintiffs by reason of defendants' unlawful and unjustified

conduct, in an amount just and reasonable and in conformity with the

evidence at trial;

(c)      punitive damages against the individual defendants to the extent allowable

by law;

(d)      attorneys fees;

(e)      the costs and disbursements of this action; and

(f)      such other and further relief as appears just and proper.

Dated:      New York, New York
            April 10, 2009

Jonathan C. Moore (jmoore@blhny.com)
Clare Norins (cnorins@blhny.com)
BELDOCK, LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400

*Attorneys for the Plaintiff*s