```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

MICHAEL WARREN and EVELYN WARREN,       x

                Plaintiffs,             x

     -against-                          x

                                        x

THE CITY OF NEW YORK, a municipal entity;
NEW YORK CITY POLICE COMMISSIONER       x       08-CV-3815 (ARR) (RER)
RAYMOND KELLY; NEW YORK CITY
POLICE SERGEANT STEVEN TALVY            x       ECF Case
(Shield No. 5408); NEW YORK CITY POLICE
OFFICER JOSEPH TILLOTSON                x
(Shield No. 30215); NEW YORK CITY POLICE
OFFICER JOHN ACCONI (Shield No. 5075);  x
NEW YORK CITY POLICE OFFICER
MIRABEL SARANTE (Shield No. 10211),     x
NEW YORK CITY POLICE OFFICER
ANTHONY CAROZZA (Shield No. 16222),     x
individually and in their official capacities; and
JOHN DOES 1-10, New York City Police    x
Officers, Supervisors and/or Commanders,
individually and in their official capacities,   x

                Defendants.             x

------------------------------------------------------------ x
```

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE AT TRIAL**

Plaintiffs Michael and Evelyn Warren submit this memorandum of law in support of their motions in limine to exclude from introduction or reference to at trial: (1) news articles and recordings; (2) summaries and/or recordings of statements allegedly made by witnesses; (3) a summary of an oral statement and written statements made by Evelyn and Michael Warren to an Investigator for the Civilian Complaint Review Board (CCRB); (4) video footage of a McDonald's Parking Lot; (5) documents from *People v. Moody*, Docket # 5968/07; (6) information regarding the names of Michael Warren's prior or current clients, and/or the specific nature of their cases; and (7) the testimony of Dr. Steven Martin and Dr. Paul Hymowitz.

## BACKGROUND

On June 21, 2007 Michael and Evelyn Warren, a married African-American couple, were in their car stopped at a stop light in Brooklyn, New York. The Warrens, both attorneys, were on their way to a legal meeting. While stopped at the light, the Warrens observed a group of police officers chase and tackle to the ground an African-American man named Freddy Moody. They then observed these police officers viciously kicking, hitting, and beating Moody while he was lying face-down on the ground in handcuffs. Defendant Sergeant Talvy, the supervising officer on the scene, kicked Moody in the head and then backed away and stood observing the other defendants herein continue the beating. Understandably appalled by what they were observing, the Warrens got out of their car and asked the officers and Sgt. Talvy to stop beating Moody. In response, Sgt. Talvy told the Warrens, in sum or substance, "Stay the fuck out of our business and get the fuck back into your vehicle." The Warrens immediately got back into their car.

Not satisfied with simply succeeding in getting the Warrens to return to their car, Sgt. Talvy then approached the passenger side of the car, where Ms. Warren was seated, and stated, in sum or substance, "What the fuck are you doing," and/or "you need to mind your fucking

business." The Warrens told Sgt. Talvy that they were attorneys and felt they had a right to be present. Apparently even further incensed by this response, Sgt. Talvy walked to the driver's side of the car, where Mr. Warren was seated; stated, in sum or substance, "I told you to stay out of our fucking business;" and punched Mr. Warren with a closed fist approximately five times through the open car window. At some point Ms. Warren reached across her husband, put her arm out, and said, in sum or substance, "Stop, why are you doing this?" In response, Sgt. Talvy punched Ms. Warren with a closed fist, with force, in her jaw. Sgt. Talvy then opened the driver's side door and pulled Mr. Warren out of the car with such force that Mr. Warren's shirt and almost the entire length of Mr. Warren's pants leg was ripped open. Sgt. Talvy slammed Mr. Warren against the car; stated, in sum or substance, "If you had stayed out of our fucking business that this wouldn't have happened;" and handcuffed Mr. Warren. When Mr. Warren told Sgt. Talvy that he was raised to speak out when he saw an injustice, Sgt. Talvy punched the handcuffed Mr. Warren again in the head.

Sgt. Talvy then placed Mr. Warren, who was injured, under arrest, though Mr. Warren had broken no law. After Mr. Warren was placed in a police van, Ms. Warren asked Sgt. Talvy if she could take her car. Sgt. Talvy asked Ms. Warren if she had a driver's license; Ms. Warren provided her valid license to Sgt. Talvy. Sgt. Talvy stated to Ms. Warren, in sum or substance, that "none of this would have happened" if the Warrens had "just minded their own business." When Ms. Warren told Sgt. Talvy, "but you shouldn't have been doing that," Sgt. Talvy responded, "Well, it's your word against my word, let's see what happens." Sgt. Talvy then gave Ms. Warren's license to Officer Mirabel Sarante, who began to write down Ms. Warren's information. When Ms. Warren asked Sgt. Talvy if he was going to give Ms. Warren her car, Sgt. Talvy stated no. Ms. Warren then approached Officer Sarante, asked for her license back,

and reached for her license. When Officer Sarante moved the license away from Ms. Warren, Ms. Warren turned and walked away. Sgt. Talvy then stated "take her down," and Ms. Warren felt at least two officers grab her from behind, push her against her car, and handcuff her. Ms. Warren was then placed under arrest.

At the precinct, subsequent to his arrest, Mr. Warren was humiliated when officers lined him up with other arrestees and commented, in sum or substance, "well we got a regular striptease show here," in reference to Mr. Warren's torn clothing. After the Warrens' arrest, several officers, including Officer Acconi, Officer Sarante, and Sgt. Talvy, filled out false paperwork to initiate a prosecution against the Warrens. Officers falsely claimed, among other things, that Mr. Warren stood between Sgt. Talvy and other officers and refused to get out of his car when told to do so. Officers falsely claimed that Ms. Warren "snatched" her driver's license from Officer Sarante and injured Officer Sarante. In truth, the Warrens broke no law. Nonetheless, Mr. Warren was charged with two misdemeanors under the New York Penal Law, Obstruction of Governmental Administration and Resisting Arrest, and the violation of Disorderly Conduct. Ms. Warren was charged with Disorderly Conduct. Mr. and Ms. Warren were released and were required to appear in Kings County Criminal Court on seven and six occasions, respectively. Mr. Warren was unable to renew his attorney "secure pass" as a result of his arrest. Mr. Warren also received notice that he must surrender his weapon and the license he maintained to carry the weapon, which he had secured because his high profile criminal law practice placed him in danger; Mr. Warren was forced to engage in litigation in order to retain the weapon and license.

The charges against the Warrens were dismissed on July 2, 2008, at which time the District Attorney stated that "the People would not be able to establish proof beyond a reasonable doubt at the time of trial."

## ARGUMENT

### I. News Articles and Recordings Should be Excluded.

Plaintiffs expect defendants will seek to admit as evidence at trial multiple news articles and news program recordings. In the Joint Pretrial Order, Defendants listed various news articles and/or recordings as exhibits K-Q, X, T, and CC. Defendants also listed as Exhibit I "All postings or pages from the website www.justiceforwarrens.org." As outlined below, these proposed exhibits should be excluded because they contain (1) out of court statements that should be excluded as inadmissible hearsay (2) information that is not relevant to any fact of consequence in determining this action and should therefore be excluded as irrelevant, and (3) proposed exhibits that should be excluded because the risk of unfair prejudice posed by the proposed exhibits outweighs any probative value they might have.

An out-of-court statement offered to prove the truth of the matter asserted is inadmissible hearsay under the Federal Rules of Evidence. *See* Fed.R.Evid. 801(c) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at trial..., offered in evidence to prove the truth of the matter asserted"); Fed.R.Evid. 802 ("Hearsay is not admissible ...."). Though a statement made by a party offered against that party is not defined as hearsay under Fed.R.Evid. 801(d)(2), out of court statements made by individuals other than the plaintiffs are inadmissible hearsay.

Under Fed. R. Evid. 401 "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Irrelevant evidence is not inadmissible. *See* Fed. R. Evid. 402.

Finally, under Fed. R. Evid. 403, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Defendants' proposed exhibits K, Q, T, X, and CC are recorded programs that purportedly include recorded statements made by Michael and/or Evelyn Warren, and are listed in the pretrial order as follows:

| | |
|---|---|
| Exhibit K: | WWOR interview of Warrens |
| Exhibit Q: | Interview of Michael and Evelyn Warren on TotalBlackTV.com |
| Exhibit T: | Statement by Evelyn Warren to WNYC's "Brian Lehrer" show |
| Exhibit X: | Michael & Evelyn Warren interview on the program "Like It Is" |
| Exhibit CC: | WBAI interview of the Warrens on 6/21/07 (recorded) |

These programs contain statements made by individuals other than the plaintiffs. Statements made by individuals other than the plaintiffs should be excluded as inadmissible hearsay pursuant to Fed.R.Evid. 802. In addition, the portions of these programs that contain statements made by the plaintiffs that do not relate to either the incident in question or plaintiffs' resulting injuries should be excluded as irrelevant, as statements regarding any other matter do not have a tendency to make a fact of consequence in determining this action more or less probable, as required by Fed. R. Evid. 401 and 402.

Defendants' proposed exhibit U is a "Summary of Statement by Evelyn Warren to WNYC's 'Brian Lehrer' show." The document is a report written by Investigator David Foster of the NYPD's Internal Affairs Bureau (IAB) containing Mr. Foster's summary of the recorded statement of Ms. Warren. As the report is Mr. Foster's written out of court statement, it cannot be offered for the truth of its contents. *See, e.g., Johnson v. White*, 2010 U.S. Dist. LEXIS 96304, n. 4 (S.D.N.Y. Sept. 9, 2010) (finding out of court written statements inadmissible for the truth of the matters asserted therein because those statements are hearsay); *Couch v. Fletcher*, 843 F.2d 1390 (6th Cir. 1988) ("the district court properly excluded written statements by unsubpoenaed witnesses because the statements are inadmissible hearsay"). In addition, this summary of the recorded statement made by Ms. Warren cannot be admitted to prove the contents of the original recording. Fed. R. Evid. 1002 provides, "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Thus, as defendants' proposed Exhibit U is inadmissible hearsay and its admission would violate the best evidence rule, it should be excluded.

Defendants' proposed exhibits L-P are news articles, and are listed in the pretrial order as follows:

Exhibit L:   NY Daily News article (June 25, 2007)

Exhibit M:   "Apartheid Americana" by Susie Day

Exhibit N:   "People Get Ready" – Amsterdam News, Aug. 16-22, 2007

Exhibit O:   "Day of Outrage" – Amsterdam News

Exhibit P:   Our Time Press – news article

Plaintiffs object to the admission of Exhibits L, M, and N. Though these news articles do purportedly contain some alleged direct quotations of plaintiffs, which may or may not be

accurate, the articles also contain the authors' summaries of facts, the authors' summaries of statements made by plaintiffs and by others, and the authors' own statements, which must be excluded as hearsay. Moreover, in order for the purported direct quotations to be admissible, defendants would first have to call the writer of the article to testify that the alleged quotations attributable to the plaintiffs are in fact accurate. All of the material in these articles, regardless of whether they are purported direct quotations or summaries of statements by the plaintiffs made by the author of the article, are out of court statements made by the authors of the articles and as such are inadmissible hearsay under Fed. R. Evid. 801 and 802. *See, e.g., Johnson v. White*, 2010 U.S. Dist. LEXIS 96304, *Couch v. Fletcher*, 843 F.2d 1390.

Plaintiffs also object to the admission of Exhibits O and P. Exhibit O is an article about a number of activist groups planning protests on September 11, 2007. Neither Michael or Evelyn Warren are quoted in this article; in fact, the only mention of plaintiffs is an allegation by the author that certain groups and/or individuals other than the plaintiffs were "galvanized" by plaintiffs' arrests and that the demands of a particular coalition included that Sergeant Talvy be fired, arrested, and prosecuted for his attack on the Warrens and Fred Moody.

Exhibit P, which is difficult and in some places impossible to read as provided by defendants, is an article describing the events surrounding the arrest of plaintiffs. The article specifically states that the plaintiffs did not provide statements about what happened to them; however, there are five sentences that begin with "Warren said" and provide a summary of Michael Warren's statements regarding the beating and arrest of Mr. Moody. Exhibit P never directly quotes the plaintiffs. Indeed most of the article, including any description of what happened to the Warrens, is based on interviews with individuals other than the plaintiffs. As

Exhibits O and P contain only statements made by the author of the article and/or individuals other than the plaintiffs, both articles are inadmissible hearsay and should be excluded.

Moreover, Exhibits M, N, O and P should be excluded as prejudicial under Fed. R. Evid. 403. Exhibit M is entitled "Apartheid Americana," and emphasizes race issues. Exhibit N is entitled "People Get Ready," and quotes Mr. Warren's comments about the "Black community." Exhibit O is titled "Day of Outrage" and describes the actions of a number of activist groups, many of which have "Black," "African," or "Islam" in their names, who invoke the names of the plaintiffs and demand justice for the plaintiffs while planning a protest on September 11, 2007--a day that might have significant emotional meaning for many members of a Brooklyn jury. Notably there is no indication that the plaintiffs were a part of any of these groups or the protests labeled "Day of Outrage," the article contains extremely little information about the incident underlying this case, and there is no indication that the plaintiffs provided any information to the author of the article. Exhibit P contains a photograph of Mr. Warren standing with a clenched fist over his head, a symbol commonly known as the "black fist" or "black power fist" and associated with the Black Panther Party (though in fact, according to the Samuel Gray Society, the salute dates back to ancient Assyria as a symbol of resistance in the face of violence).

This collection of articles has no probative value; particularly Exhibit O, which contains almost no information about the incident underlying this case and does not quote either of the plaintiffs. This collection of articles is, however, likely to prejudice the jury by improperly suggesting that plaintiffs are part of a radical "black power" or race-driven activist group. Exhibit O might improperly and falsely suggest that the Warrens are affiliated with a number of groups, including Islamic groups, that planned a protest on September 11, 2007. Though such information should not create bias, even if it were true, the articles are none the less very likely

to bias jurors against the Warrens, and, given the lack of any evidentiary value, can only be used by the defendants to inflame passions of the jury or create unfair prejudice against the plaintiffs. Fed. R. Evid. 403 provides, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury…." These articles pose the dangers of unfair prejudice, confusion of issues, and misleading the jury, and those dangers substantially outweigh the limited probative value of the exhibits. Exhibits M, N, O and P should therefore be excluded.

Defendants have also listed on their proposed exhibit list exhibit I, listed as "All postings or pages from the website www.justiceforwarrens.org." The website www.justiceforwarrens.org contains content that was not written by Michael or Evelyn Warren; indeed, the website is labeled "Designed & donated by Friends & Family of the Warrens." Though the website does purportedly contain some direct statements made by Michael or Evelyn Warren, the entirety of the "postings and pages" from the website do not constitute statements made by the plaintiffs. Thus, any information contained in the postings or pages contained on this website should be excluded as inadmissible hearsay under Fed. R. Evid. 801 and 802. Portions of the website that contain irrelevant information should also be excluded under Fed. R. Evid. 401 and 402.

## II. Summaries and/or Recordings of Interviews with Alleged Eyewitnesses should be Excluded as Hearsay.

In defending against plaintiffs' claims, plaintiffs expect defendants will seek to admit as evidence at trial multiple documents and/or recordings summarizing or containing statements allegedly made by various supposed eyewitnesses as a substitute for having the alleged eyewitnesses testify in person at trial. These exhibits are listed in the pretrial order as follows:

Exhibit F:     IAB Worksheet re Interview of Bruce Reynolds
Exhibit G:     IAB Worksheet re Re-interview with April Davis

Exhibit H:       IAB Worksheet re Canvass of Incident Location (to the extent that the document memorializes a statement by Ahmad Ramada)

Exhibit R:       Statement of Freddy Moody

Exhibit W:      Telephone Statement of Bruce Reynolds to CCRB--written summary and recording.

Plaintiffs submit that defendants should be precluded from offering these exhibits at trial to prove the truth of the matter asserted in the statements because the exhibits constitute inadmissible hearsay (in some instances, double and triple hearsay) if introduced for that purpose.

Exhibits F, G, H, and the written summary offered as part of Exhibit W are reports authored by various Investigators in the NYPD IAB that purport to summarize interviews with various witnesses. Exhibit R is a form prepared by an Assistant District Attorney that purports to summarize Detective Competiello's description of a statement allegedly made by Freddy Moody. Exhibits F, G, H, R, and the written summary offered as part of Exhibit W are therefore written statements made out of court, and cannot be offered for the truth of their contents. *See, e.g.*, *United States v. Detrich*, 865 F.2d 17, 20 (2d Cir. 1988) (finding that the district court correctly excluded the out of court written statement of a witness that recounted that witness's conversation with another individual); *Couch v. Fletcher*, 843 F.2d at 1390 n.4 ("the district court properly excluded written statements by unsubpoenaed witnesses because the statements are inadmissible hearsay"); *Brown v. N.Y. State Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 418 n. 5 (W.D.N.Y. 2008) (written statement from plaintiff's co-worker detailing examples of workplace harassment "appears to be inadmissible hearsay"). Similarly, the recorded phone call offered as Exhibit W is a recorded statement made out of court and therefore cannot be offered

for the truth of its contents. *See, e.g., United States v. Olivieri*, 740 F. Supp. 2d 414, 421 (S.D.N.Y. 2010) (recording of an out of court statement found to be inadmissible hearsay).

Moreover, many of the hearsay statements themselves contain hearsay, making them further inadmissible. Exhibits F, G, H, R, and the written summary offered as part of Exhibit W are summaries of statements made by other people. The hearsay statements written by either members of the NYPD's IAB or an Assistant District Attorney contain purported summaries of out of court statements made by various witnesses (Bruce Reynolds, April Davis, and Ahmad Ramada) and Detective Competiello. Exhibit R contains yet another layer of hearsay, as Detective Competiello's reported statement is a summary of an out of court statement allegedly made by Freddy Moody. This multi-layered hearsay is not competent evidence. *See United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990) ("Each hearsay statement within multiple hearsay statements must have a hearsay exception in order to be admissible") (citing Fed. R. Evid. 805); *Murphy v. Metropolitan Transp. Authority*, 548 F. Supp.2d 29, 43 (S.D.N.Y. 2008) ("Under Rule 805, hearsay within hearsay is only admissible if a recognized hearsay exception applies at both layers"); *United States v. Carneglia*, 256 F.R.D. 384, 391 (E.D.N.Y. 2009) (Even if a report is admissible, "[w]here reports contain statements of witnesses, the contents of the reports may not be admitted without analysis of the hearsay").

    III.    <u>Statements and/or Summaries of Statements Made by Evelyn and Michael Warren to CCRB Investigator Foster and IAB Sgt. Ayala should be Excluded as Hearsay, Irrelevant Evidence, and Prejudicial.</u>

In defending against plaintiffs' claims, plaintiffs expect defendants will seek to admit as evidence at trial three documents describing statements made by the plaintiffs indicating that they did not wish to be interviewed by the Civilian Complaint Review Board (CCRB) and/or NYPD's IAB while their criminal cases were pending. These exhibits are listed in the Joint Pretrial Order as follows:

>   Exhibit E:       IAB Worksheet #44
>
>   Exhibit S:       Letter from Evelyn Warren to CCRB Investigator Foster
>
>   Exhibit V:       Letter from Michael Warren to CCRB Investigator Foster

Exhibit E should be excluded as hearsay. As a report written by Sgt. Desiree Ayala stating that she called Evelyn Warren and describing the conversation, this is a written out of court statement made by Sgt. Ayala and should be excluded for the reasons outlined above. Moreover, for the reasons outlined below, the exhibit should be excluded because it contains nothing probative of the issues to be tried by the jury in this case.

Exhibits E, S, and V should be excluded as irrelevant. Exhibit E indicates that Ms. Warren stated that she would have to consult with an attorney prior to being interviewed by the IAB. Exhibits S and V are nearly identical letters from the plaintiffs to the CCRB stating that the plaintiffs did not wish to be interviewed regarding the incident. The letters note that the plaintiffs do not believe it is in their best interest to provide an interview while criminal charges are pending, and express disbelief in the abilities of the CCRB. Aside from stating the time and place of the incident, which are undisputed, these letters do not provide any statement about the incident underlying this case. As information that the plaintiffs did not wish to speak to investigators while they had a pending criminal case has no tendency to make a fact of consequence more or less probable than it would be without the evidence, this evidence should be excluded under Fed. R. Evid. 401. These exhibits should also be excluded as prejudicial, as the only function they serve is to suggest to the jury that the Warrens did not wish to give a statement to investigators because they were untruthful or had something to fear, or were not really interested in disciplining the officers involved because they were intending to bring a civil suit for damages, when in fact plaintiffs were criminal defendants choosing to remain silent

when charged with a crime. As any probative value is outweighed by the risk of unfair prejudice, the exhibits should be excluded under Fed. R. Evid. 403.

In addition, if the call described in the report submitted as Exhibit E was recorded, Exhibit E should be excluded under the best evidence rule, as the recording itself must be introduced, rather than a summary of the recording, under Fed. R. Evid. 1002.

### IV. Video footage of the McDonald's Parking Lot should be Excluded as Irrelevant and Prejudicial

Defendants seek to introduce video surveillance footage of the McDonald's Parking lot where the incident took place, listed in the Joint Pretrial Order as Exhibit D. The video should be excluded as irrelevant. The video briefly shows Mr. Moody exiting a car and running off camera, with officers in pursuit. The fact that Mr. Moody got out of a car and ran, and that officers pursued him, is not disputed. Sometime later the video shows Michael Warren, in handcuffs, being escorted by an officer to a police van. The fact that Mr. Warren was handcuffed and escorted to a police van is also not in dispute. The video does not depict any of the actions that occurred between these two events, and therefore does not depict the events relevant to and/or underlying this action. As the video is not connected to any fact of consequence in determining the action, it is irrelevant and inadmissible under Fed. R. Evid. 401 and 402.

Moreover, to the extent the video has any probative value, that value is outweighed by a danger of both unfair prejudice and needlessly presenting cumulative evidence, and should therefore be excluded under Fed. R. Evid. 403. The video serves only to provide the jury with a visual picture of Michael Warren in handcuffs and under arrest, which is prejudicial and serves no purpose other than to inappropriately paint Mr. Warren as a criminal. Moreover, as the video shows evidence of facts not in dispute it is needlessly cumulative. Thus, defendants' proposed Exhibit D should be excluded.

V.   Documents from *People v. Moody*, Docket # 5968/07 should be Excluded because they were not Provided During Discovery, are not Relevant, and are Prejudicial.

In defending against plaintiffs' claims, plaintiffs expect defendants will seek to admit as evidence at trial three documents from the criminal prosecution of Fred Moody in *People v. Moody*, Docket # 5968/07. These exhibits are listed in the Joint Pretrial Order as follows:

Exhibit A:   *People v. Moody*, Docket # 5968/07 – Certificate of Disposition

Exhibit B:   *People v. Moody*, Docket # 5968/07 – Plea Allocution

Exhibit C:   *People v. Moody*, Docket # 5968/07 – NYS State DCJS Warrant Search (Moody) showing multiple outstanding bench warrant(s)

These documents were not provided to plaintiffs during discovery and are not publically available. Moreover, to the extent that they were produced following a waiver of confidentiality in any civil suit brought by Mr. Moody, that waiver surely did not include permission to use Mr. Moody's records in unrelated litigation. They should therefore be excluded under Fed. R. Civ. Pro. 37(c)(1), which provides "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence…at a trial, unless the failure was substantially justified or is harmless."

These documents should also be excluded as irrelevant and prejudicial. Facts about the actions of Fred Moody before the Warrens arrived at the scene of the underlying incident and observed officers kicking Mr. Moody are not material to this case. The Warrens do not allege that officers lacked probable cause to arrest Mr. Moody. Thus, the fact that Mr. Moody pled guilty (Exhibits A and B) is irrelevant. Exhibit C if even less relevant, as whether Mr. Moody had outstanding bench warrants at the time of his arrest is immaterial to whether he was being kicked by police officers after he was handcuffed and completely unrelated to the harm done to the plaintiffs. These documents serve no purpose but to prejudice the jury against Mr. Moody by

painting him as a criminal. As the documents are irrelevant, and any probative value is substantially outweighed by the risk of unfair prejudice, they should be excluded under Fed. R. Evid. 401, 402 and 403.

Should this Court determine that these documents are admissible, plaintiffs would submit that in order to accurately convey Mr. Moody's experience in this case to the jury, the jury should be advised that Mr. Moody brought a civil suit for the beating he suffered and settled that matter for $45,000.

VI. <u>Information regarding the names of Michael Warren's prior or current clients, and/or the specific nature of their cases, should be excluded as irrelevant and prejudicial.</u>

Mr. Warren is a high profile criminal defense and civil rights attorney who has represented controversial clients in controversial cases. Any mention of Mr. Warren's cases, beyond a general statement that he is a criminal defense and civil rights attorney, should be excluded. Who Mr. Warren has represented during his career as a lawyer, and the nature of the allegations in his clients' cases, is completely irrelevant to the facts at issue here. Moreover, mentioning controversial clients and cases to the jury serves only to prejudice them against Mr. Warren. As information about the names of Mr. Warren's clients and the specific nature of their cases is irrelevant, and any probative value is substantially outweighed by the risk of unfair prejudice, any reference to the name of Mr. Warren's client(s) or the nature of his case(s) should be excluded under Fed. R. Evid. 401, 402 and 403.

VII. **The Testimony of Dr. Steven Martin and Dr. Paul Hymowitz Should Be Excluded**

    a. <u>The testimony of Dr. Steven Martin should be Excluded because his Opinion is Not Based on Sufficient Facts and Data.</u>

"The Rules of Evidence… assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). Fed. R. Evid. 702 provides that "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if…the testimony is based on sufficient facts and data." Dr. Martin's opinion should be excluded because it does not rest on a reliable foundation, as it is not based on sufficient facts and data.

According to his report, Dr. Steven Martin seeks to render an opinion regarding the "medical status" of the plaintiffs, including the severity of the injuries resulting from the underlying incident and whether plaintiffs have "ongoing physical problems." Dr. Martin's opinion is based on a review of records; he has never examined either of the plaintiffs. Though he has never examined Mr. Warren, Dr. Martin seeks to opine on the impact of the alleged incident on Mr. Warren's hypertension and the reasons for an episode in which Mr. Warren fainted. Though he did not see Mr. or Ms. Warren after the incident, Dr. Martin seeks to opine on the nature of their injuries based on a limited number of photographs and a review of medical records. Dr. Martin's examination of medical records related to this incident, transcripts of deposition testimony, and discovery documents provided to him by the City is not an adequate basis upon which to base an opinion about the severity of injuries to the Warrens, and is certainly an insufficient basis for any opinion about the plaintiffs' current health status and/or ongoing conditions. His testimony should therefore be excluded under Fed R. Evid. 702.

    b. <u>The Testimony of Dr. Paul Hymowitz should be Excluded because he does not have an Adequate Basis to Form an Opinion, is Not Qualified to Testify as an Expert in the Field of PTSD Diagnosis, and his Testimony is Cumulative.</u>

Like Dr. Martin, Dr. Hymowitz did not examine either of the plaintiffs and bases his report on a review of records. Dr. Hymowitz examined even fewer records than Dr. Martin,

looking only at the expert report of Dr. Sanford Drob (produced by the plaintiffs), Dr. Drob's Curriculum Vitae, transcripts of the depositions of the plaintiffs, and "notes of Dr. Barbara Blum and Dr. Jeffrey Gardere." Dr. Hymowitz then opines that Dr. Drob's reports regarding the plaintiffs do not meet the professional standards of an expert in forensic psychology. Dr. Hymowitz specifically criticizes the instruments used by Dr. Drob to examine the plaintiffs for PTSD.

Dr. Hymowitz' testimony should be excluded because it is not based on sufficient facts or data. Dr. Hymowitz looked at a limited number of medical records and did not examine either plaintiff; he is therefore unable to meaningfully evaluate the reports of Dr. Drob, who personally examined both plaintiffs. As Dr. Hymowitz' opinion is not based "sufficient facts and data," it should be excluded under Fed. R. Evid. 702.

Dr. Hymowitz' testimony should also be excluded because he is not qualified to render an opinion about whether Dr. Drob used appropriate methods as a forensic psychologist to evaluate the plaintiffs. More specifically, he is not qualified to render an opinion about the optimal and/or appropriate methods for evaluating a patient for PTSD. An expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert must be qualified in the specific field in which he or she seeks to render an opinion. *See Rosen v. Tanning Loft*, 791 N.Y.S.2d 641, 643 (App. Div. 2d Dep't 2005) (holding that a proffered expert was not qualified to testify because, although he was an engineer, he had "no specialized knowledge, experience or training with regard to tanning equipment so as to qualify him as an expert in the area"); *Trumps v. Toastmaster, Inc.*, 969 F. Supp. 247, 251-52 (S.D.N.Y. 1997) (holding that the proffered expert, a mechanical engineer, was not qualified to express an opinion on electrical engineering, the subject at issue, noting that the proffered expert

devoted a substantial amount of his time cases that did not involve electrical engineering, that his work experience embraced only a limited involvement with electrical engineering, that he belonged to no electrical engineering professional societies, and had published no articles in that field); *Hong v. County of Nassau*, 139 A.D.2d 566 (App. Div. 2d Dep't 1998) (affirming trial court's decision to exclude a portion of an expert's testimony where the expert "was a mechanical engineer and had extensive work experience in the specialized area of the safety engineering of vehicles," but "his expertise did not embrace the design or development of golf courses or of any type of recreational area").

Dr. Hymowitz is a licensed psychologist, but lacks expertise in the diagnosis of PTSD. Dr. Hymowitz's Curriculum Vitae indicates that he specializes in issues relating to family and children. He reports that his private practice is comprised of "child, adolescent and adult psychotherapy and psychoanalysis" and "marital and divorce consultation and therapy." He is a court appointed forensic expert on child custody. His most recent publications and presentations have been related to adoption, divorce, parenting, and child custody evaluations; his prior presentations and publications indicate a focus on schizophrenia. There is no indication that Dr. Hymowitz is an expert in PTSD or the methods used by psychologists to evaluate patients for PTSD. He is therefore not qualified to render an opinion about the validity of the methods used by Dr. Drob in evaluating the plaintiffs.

Finally, Dr. Hymowitz's testimony should be excluded as cumulative. Fed. R. Evid. 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of…undue delay, wasting time, or needlessly presenting cumulative evidence." The City plans to call as an expert in the field of psychiatry Dr. Michael Aronoff, who examined the plaintiffs and seeks to render an opinion regarding their psychological/

psychiatric status. As Dr. Aronoff will testify to his opinion that Dr. Drob's evaluation is incorrect, calling Dr. Hymowitz as a second expert to provide the same opinion is cumulative and Dr. Hymowitz's testimony should be excluded.

## CONCLUSION

For the reasons stated above, plaintiffs ask that the Court exclude from introduction or reference to at trial: (1) news articles and recordings, (2) summaries and/or recordings of statements allegedly made by witnesses; (3) a summary of an oral statement and written statements made by Evelyn and Michael Warren to an Investigator for the Civilian Complaint Review Board (CCRB); (4) video footage of a McDonald's Parking Lot; (5) documents from *People v. Moody*, Docket # 5968/07; (6) information regarding the names of Michael Warren's prior or current clients, and/or the specific nature of their cases; and (7) the testimony of Dr. Steven Martin and Dr. Paul Hymowitz.

Dated:   New York, New York
         April 11, 2012

_____
Jonathan C. Moore
Elizabeth C. Logemann
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiff*