**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------- x

MICHAEL WARREN and EVELYN WARREN,   x

             Plaintiffs,   x

   -against-   x

   x

THE CITY OF NEW YORK, a municipal entity;   x     08-CV-3815 (ARR) (RER)
NEW YORK CITY POLICE COMMISSIONER
RAYMOND KELLY; NEW YORK CITY
POLICE SERGEANT STEVEN TALVY   x     ECF Case
(Shield No. 5408); NEW YORK CITY POLICE
OFFICER JOSEPH TILLOTSON
(Shield No. 30215); NEW YORK CITY POLICE   x
OFFICER JOHN ACCONI (Shield No. 5075);   x
NEW YORK CITY POLICE OFFICER
MIRABEL SARANTE (Shield No. 10211),   x
NEW YORK CITY POLICE OFFICER
ANTHONY CAROZZA (Shield No. 16222),   x
individually and in their official capacities; and
JOHN DOES 1-10, New York City Police   x
Officers, Supervisors and/or Commanders,
individually and in their official capacities,   x

             Defendants.   x

--------------------------------------------------------------- x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTIONS *IN LIMINE***

Plaintiffs Michael and Evelyn Warren, by their attorney Beldock Levine & Hoffman, LLP, respectfully submit this Memorandum of Law in opposition to defendants' Motions *in limine*.

## INTRODUCTION

This action arises from the unlawful arrests of plaintiffs Michael and Evelyn Warren and defendants' use of excessive force during those arrests. In regards to the underlying incident, plaintiffs rely on the facts presented in their Memorandum of Law in Support of Motion *in limine* to Exclude Certain Evidence at Trial. Subsequent to the arrest and assault, investigations were conducted by the New York Police Department (NYPD), the NYPD's Internal Affairs Bureau (IAB), and the New York City Civilian Complaint Review Board (CCRB). Defendants have moved to exclude a number of plaintiffs' proposed exhibits and some of plaintiffs' proposed witnesses. Much of defendants' Memorandum of Law in Support of Defendants' Motions *in Limine* focuses on documents and witness testimony related to the IAB and CCRB investigations. Both evidence that the investigations took place and the information discovered during the investigations are relevant and admissible. As all of the items defendants seek to exclude are admissible, the defendants' Motions *in limine* should be denied.

## ARGUMENT

I.    <u>Defendants' Prior Disciplinary Records Should Be Admitted</u>

Defendants' prior disciplinary records should be admitted because they are relevant to plaintiffs' abuse of process claim. A plaintiff may assert a malicious abuse of process claim where a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v.*

*Sheldon*, 41 F.3d 73, 80 (2d Cir. N.Y. 1994). As the Court recognized in its March 1, 2012 ruling denying defendants' Motion for Summary Judgment, the plaintiffs may establish a collateral objective outside of the legitimate ends of process by proving, *inter alia*, that the defendants arrested plaintiffs to impugn plaintiffs' credibility with respect to the events of June 21, 2007, in the hopes of protecting their employment should the plaintiffs report that defendants had physically assaulted Fred Moody and plaintiffs. *See Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) ("Fabricating assault charges to save one's job could be abuse of process...because 'safeguarding one's own employment lies outside the legitimate goal of criminal process'" (citations omitted). Such a theory is supported by Sgt. Talvy's statement to Evelyn Warren, "Well, it's your word against mine. Let's see what happens." Such a statement is evidence that Sgt. Talvy was aware that the Warrens might make a complaint and therefore made false charges against them to impugn their credibility and protect his own position.

In order to prove that defendants acted for the collateral objective of protecting their current positions of employment, plaintiffs must be permitted to introduce evidence of defendants' motive and intent. The fact that defendants had been investigated by the CCRB and the IAB in the past demonstrates that (1) they were familiar with the CCRB and IAB complaint processes and aware that a complaint made by plaintiffs might affect their positions, employment, and careers, and (2) defendants knew that they had prior complaints on their disciplinary records and that an additional complaint, particularly a credible complaint for the use of force, might result in their being placed on monitoring, being demoted, or even being fired. The prior complaints are relevant regardless of the "findings" of the CCRB and/or IAB investigators--defendants themselves argue that Sergeant Talvy was placed on force monitoring "because of the number of CCRB complaints filed within a period of time...regardless of the

disposition of the complaint." See defendants' Memorandum of Law in Support of Defendants' Motions *in Limine*, p. 10. Thus, the fact that Sgt. Talvy knew he had prior CCRB complaints on his record, and was aware that another complaint would (and apparently did) result in his being placed on force monitoring, is powerful evidence that he fabricated charges against the plaintiffs in an effort to dissuade them from making a complaint at all, and to discredit any complaint plaintiffs might make to any authority figure or disciplinary body. Similarly, evidence that the other defendant officers had prior CCRB and IAB complaints is relevant to their motives and intentions regarding whether they were arresting and prosecuting plaintiffs for a collateral purpose. An officer with several prior complaints is more likely to be fearful of a credible complaint made by the plaintiffs--and to act to prevent any credible complaint from being made-- than an officer with no disciplinary history. For similar reasons, it is relevant that several defendant officers had prior complaints for similar charges (i.e. related to force), as an officer with several prior complaints on his or her disciplinary record for use of force is more likely to fear a credible complaint for the use of force being issued against him or her than an officer with no record of such complaints.

The law clearly establishes that this evidence is admissible to show the defendants' motive and intent. As defendants acknowledge on page 7 of their Memorandum of Law in Support of Defendants' Motions *in Limine*, evidence of other acts is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." See Fed R. Evid. 404(b). CCRB records may be admissible for this purpose: "CCRB records may well be relevant, as 'Rule 404(b) of the Federal Rules of Evidence provides that evidence of 'other crimes, wrongs, or acts' may be admissible for at least some purposes, including 'intent . . . absence of mistake or accident.'" *Fountain v. City of New York*, 2004 U.S.

Dist. LEXIS 7539 *6 (S.D.N.Y. May 3, 2004) (citing *Reyes v. City of New York*, 2000 U.S. Dist. LEXIS 15078 (S.D.N.Y. 2000)). The Second Circuit follows the "inclusionary" approach to "other crimes, wrongs, or acts" evidence, under which "such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character," or "unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (citing *United States v. Harris*, 733 F.2d 994, 1006 (2d Cir. 1984) and *United States v. Sappe*, 898 F.2d 878, 880 (2d Cir. 1990)). As evidence of the defendants' prior disciplinary history is being offered not for the purpose of showing defendants' bad character, but to show the motive and intent required to establish an element of a claim, it is admissible under Fed. R. Evid. 404(b). Defendants' arguments that such evidence cannot be introduced to show propensity to commit an act or conformity with a character trait, performance of a physical act, opportunity, preparation, plan, or "modus operandi" are unavailing, as the evidence is not being introduced for these purposes.

Finally, the probative value of the evidence is not "substantially outweighed" by the dangers of unfair prejudice, confusion of the issues, or waste of time. The disciplinary history is relevant for the reasons outlined above to show that the defendant officers acted for a collateral purpose. It was the fact that the officers had these complaints on their records, and in some cases that they had complaints of a similar nature on their records--regardless of the findings made by CCRB or IAB--that gave the defendant officers a motive to prevent plaintiffs from making yet another complaint against them, particularly a credible complaint regarding the use of force. This is especially true because after a certain number of complaints are filed, regardless of the outcome of the investigation, the officers are relegated to force monitoring, an occurrence which is noted in an officer's personnel file and which can affect their careers. Defendants' arguments

that the prior complaints against Sgt. Talvy are not probative because they were "resolved in his favor or otherwise unproven" misses the mark because it was the fact that Sgt. Talvy knew the complaints had been made that provided Sgt. Talvy with a collateral motive to arrest and prosecute the plaintiffs. Moreover, while defendants argue that prior CCRB complaints are less probative when the officer was "exonerated," many of the "findings" made by the CCRB and/or IAB regarding Sgt. Talvy and the other defendant officers in this case did not exonerate the defendants. Though defendants' Memorandum of Law makes much of findings of "unsubstantiated," "administratively closed," and/or "complainant or victim uncooperative," a finding of "unsubstantiated" simply means that "the Board determined that there is insufficient evidence to establish whether an act of misconduct occurred,"[1] and a CCRB complaint might be "administratively closed" or marked "complainant or victim uncooperative" for any number of reasons, including cases in which a complaining individual was arrested and chose not to participate in a CCRB interview while a criminal charge was pending. Thus this case differs significantly from *Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991), cited by defendants, in which the court upheld the exclusion of seven prior CCRB complaints when the officer had been "exonerated" in six out of the seven complaints. Moreover, the *Berkovich* plaintiff raised claims of false arrest and unlawful imprisonment, but did not raise a claim of malicious abuse of process. *See id.* at 1021. As plaintiffs have raised that claim in this case, and therefore must prove as an element of that claim that the defendant officers arrested and prosecuted plaintiffs for a collateral objective, the prior complaints are particularly probative here. This strong probative value is not substantially outweighed by the risk of unfair prejudice, particularly given that the defendants are free to argue that the prior charges were not substantiated, and need not admit any

---

[1] See Defendants' Exhibit A to their Memorandum of Law in Support of Defendants' Motions *in Limine* , p. 3.

additional evidence to do so as the findings of the CCRB are listed directly next to the charges on the officers' histories. *See Williams v. McCarthy*, 2007 U.S. Dist. LEXIS 79151, *18-19 (S.D.N.Y. 2007) (Finding that prior complaints made to the CCRB concerning arresting officers would be reviewed by the Court and admitted if probative, noting "In sum, disciplinary records and civilian complaints have 'frequently played a role in the court's analysis of an array of claims under section 1983.' Thus, numerous courts 'have repeatedly directed production of [CCRB] complaints, whether substantiated or unsubstantiated or even withdrawn, as well as records of complaints reflected in the CPI and JAB investigative records ...'").

II.    The CCRB Findings Concerning This Incident Should be Admitted

The CCRB findings related to the underlying incident are relevant and should be admitted. First, for the reasons outlined above, it is relevant that Sgt. Talvy was put on force monitoring after the filing of the CCRB complaint, and that a recommendation was made by CCRB to Sgt. Talvy's superior officers that he be charged and disciplined for misconduct. The fact that Sgt. Talvy was monitored because of the complaint and could have been disciplined as a result of the investigation demonstrate his collateral objective in arresting and charging plaintiffs—to avoid those very consequences. In addition, the findings are relevant because plaintiffs have raised the claim of excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983, and therefore must prove that the amount of force used by Sgt. Talvy and defendant officers was not objectively reasonable in light of the facts and circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Whether Sgt. Talvy acted in conformity with his training and the guidelines of the NYPD--i.e., whether he committed misconduct--is relevant to whether he used more force than a reasonably competent officer would have thought reasonable under the circumstances. The purpose of admitting the CCRB's

7

report and/or findings would not be to suggest to the jury that it should reach the same conclusion as the agency, as posited by the defendants, but to provide evidence to the jury supporting plaintiff's allegation that the force used by Sgt. Talvy—punching Mr. Warren in the face—was unreasonable. The ultimate determination remains with the jury, and defendants are free to argue just that. Thus, the CCRB's findings that Sgt. Talvy committed misconduct are relevant and should be admitted.

The CCRB's findings should also be admitted for the sake of balance. Defendants plan to call an expert, who is a prior employee of the NYPD, to testify that Sgt. Talvy's use of force was not unreasonable under the circumstances. Evidence that CCRB investigators using the same NYPD standards found that Sgt. Talvy had used excessive force counters the defendants' expert opinion and should be admitted for the sake of fairness. Defendants also seek to introduce evidence that plaintiffs were not cooperating with the officers present on the scene, to suggest that plaintiffs were in the wrong and no officer misconduct occurred. Evidence of the CCRB findings is crucial to counter this incorrect implication.

Defendants are incorrect in asserting that "in general" the courts in the Second Circuit exclude such evidence. In fact, Second Circuit district courts have admitted CCRB findings regarding the incident underlying the pending lawsuit. *See Williams v. McCarthy* 2007 U.S. Dist. LEXIS 79151, *15 (S.D.N.Y. Oct. 25, 2007) (holding that testimony by the plaintiff with regard to his dealings with the CCRB and testimony by a witness from the CCRB to authenticate that agency's investigation into plaintiff's claims and its findings with regard thereto were admissible, despite defendants' argument that such evidence should be excluded because it would "only confuse and mislead the jury"); *Jones v. City of New York*, 2002 U.S. Dist. LEXIS 2052, *12 (S.D.N.Y. Feb. 11, 2002) (holding that evidence of the "existence and substance of the

investigations conducted by the N.Y.P.D., Internal Affairs Bureau, and the Bronx County

District Attorney's Office" was admissible because such evidence was " highly relevant" and

further that "[t]he jury is entitled to know whether the city agencies received and responded to

the allegations made by Jones. Moreover, the breadth and depth of the investigation might be

relevant to whether his allegations were taken seriously and investigated fully); *Hill v. City of

New York*, 2005 U.S. Dist. LEXIS 38926, *11-12 n. 1 (E.D.N.Y. Dec. 29, 2005) (holding that a

CCRB report representing the factual findings of the investigation of plaintiff's complaint was

admissible). These cases are in fact more illuminating than the two cited by defendants, *Patton v.

City of New York*, 2002 U.S. Dist. LEXIS 11479 (S.D.N.Y. Jul. 2, 2002), and *Morales v. City of

New York*, 2000 U.S. Dist. LEXIS 18711 (S.D.N.Y. Jan 2, 2001). In *Patton* the court simply

stated that a CCRB report would be excluded under Fed. R. Evid. 403 without further

explanation, *Patton,* 2002 U.S. Dist. LEXIS 11479 at *1-2; in *Morales* the court rules that the

trial court did not error in excluding a CCRB report under Fed. R. Evid. 403 because the matter

was "entirely within the Court's discretion," *Morales*, 2000 U.S. Dist. LEXIS 18711 at 19 n. 4.

Neither case provides any factual information regarding why, in the circumstances presented in

those particular cases, the reports lacked probative value or were particularly prejudicial.

Moreover, as it is within the Court's discretion to admit or exclude state or local agency

findings on matters that are the subject of the claims brought to trial, *see Paolitto v. John Brown

E. & C. Inc.*, 151 F.3d 60, 64 (2d Cir. 1998), courts have used their discretion to admit state or

local agency findings in a number of arenas. *See e.g. Beech Aircraft Corp. v. Rainey*, 488 U.S.

153, 170 (1988) (upholding admission of portions of an accident report created by JAG that

provided conclusions based on a factual investigation of the accident underlying plaintiff's

claim); *Chandler v. Roudebush*, 425 U.S. 840, 864 n. 39 (1976) ("Prior administrative findings

9

made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo"); *Watson v. E.S. Sutton, Inc.*, 2005 U.S. Dist. LEXIS 31578 (S.D.N.Y. Sept. 6, 2005) (upholding admission of EEOC Determination, EEOC right to sue letter, and other documents from EEOC file upon finding that the documents were not unduly prejudicial).

As in *Jones v. City of New York*, 2002 U.S. Dist. LEXIS 2052 (S.D.N.Y. Feb. 11, 2002), the CCRB findings in this case are "highly relevant" because they address the issues of the collateral objective for plaintiffs' arrest and prosecution, and the reasonableness of the force used by defendants, as outlined above.  This probative value is not substantially outweighed by the risk of prejudice, as the defendants are free to argue to the jury that the CCRB investigation was based on the standards defining police misconduct rather than the standards defining a constitutional violation. If the Court finds that there is any risk of prejudice, such risk can be eliminated by an appropriate jury instruction. Nor will the introduction of the CCRB report create undue delay or a trial within a trial, as the CCRB report addresses the very same incident underlying the plaintiffs' claims, and the evidence defendants would admit to challenge the findings of the CCRB is the very same evidence they will admit to challenge the allegations of the plaintiffs. The short amount of time required to explain to the jury that the CCRB applies standards defining police misconduct and that the jury should make its own findings does not create such a risk of undue delay or confusion of issues that those risks substantially outweigh the high probative value of the proposed evidence. Thus, the CCRB's findings should be admitted.

III.   Evidence that Freddy Moody Pled Guilty Should be Excluded for the Reasons Previously Argued in Plaintiffs' Memorandum of Law in Support of Motion *in Limine* to Exclude Certain Evidence at Trial.

For the reasons laid out in plaintiffs' Memorandum of Law in Support of Motion *in limine* to Exclude Certain Evidence at Trial, the certificate of disposition of the criminal case against Freddy Moody and his plea allocution should be excluded from evidence. These documents are irrelevant and cumulative because the facts the government seeks to prove (that Mr. Moody bought drugs and drove a stolen car recklessly, and was pursued by officers in their vehicles and on foot) are not in dispute, and the defendants intend to call officers as witnesses who will testify to these uncontested facts. Moreover, as neither the certificate of disposition nor the plea allocution provide any illuminating facts about the circumstances under which Moody was arrested the only possible purpose of such evidence is to inflame the passions of the jury by demonstrating—and emphasizing--that Moody is a convicted criminal.

Were the court to admit evidence of Moody's conviction, it would be fundamentally unfair to preclude plaintiffs from presenting evidence that the City paid Mr. Moody $45,000.00 in a settlement when he brought a suit for excessive force arising from the very same facts. In presenting evidence of Mr. Moody's conviction the City seeks to give the jury the impression that the result of Mr. Moody's arrest was that he was convicted of violating the law and sentenced. That impression is misleading because it is incomplete. The outcome of Mr. Moody's arrest is that he was convicted of breaking the law and was then paid $45,000 in settlement of his claim that he was beaten at the time of his arrest. The introduction of evidence of the settlement is not barred by Fed. R. Evid. 408 because it is not being introduced to "prove or disprove the validity or amount of a disputed claim," but to provide the jury with a full and fair picture of what occurred after Mr. Moody's arrest. Fed. R. Evid. 408(b) specifically states "the court may

admit this evidence for another purpose." Therefore, the Settlement Stipulation should be admitted.

> IV. None of Plaintiffs' Proposed Witnesses Should be Excluded.

Detectives Competiello, Cosgrove and Kelly may be called to testify regarding admissions made by one or more defendants regarding facts relevant to the allegations in this case, which are admissible under Fed. R. Evid. 801(d)(2). In addition they may be called to impeach defendants or other witnesses who testify inconsistently with their prior statements to Detectives Competiello, Cosgrove, and Kelly. All of the statements made by witnesses of the incident to these proposed witnesses were not recorded on tape, and even if they were there is no requirement that the tape be used to impeach rather than the testimony of the detectives. For all of the reasons outlined in Sections I and II above, the fact that IAB conducted an investigation is not prejudicial or irrelevant. *See Williams v. McCarthy,* 2007 U.S. Dist. LEXIS 79151, *Jones v. City of New York*, 2002 U.S. Dist. LEXIS 2052, cited *supra*. These witnesses should therefore be permitted to testify.

Chief Nelson was present at the 77th Precinct the night the Warrens were incarcerated there. Because, according to the IAB interview summaries, the defendant officers and other officers who were present have provided different accounts of whether the Warrens were injured and/or the extent of their injuries, the testimony of Chief Nelson might very well be different from the testimony of other officers. Moreover he, just like the other officers present, has direct knowledge about the condition of the Warrens after their arrest. Councilman Barron, Assistant Chief Ziegler, Attorney Marissa Benton, and Sally O'Brien of Radio Station WBAI should be permitted to testify for the same reasons, as they all personally observed the plaintiffs shortly after their arrest.

Melissa St. Fleur is an EMT who treated Freddy Moody at the scene and observed injuries to his person. As the defendant officers dispute plaintiff's allegation that defendants, including Sgt. Talvy, were beating Mr. Moody, and that plaintiffs' were arrested because they protested that beating and because officers were fearful of being disciplined for participating in that beating, the disputed fact of whether the beating occurred must be determined by the jury and the testimony of the first medical professional to treat Mr. Moody is highly relevant to this case. Moreover, because the officers deny the beating occurred, evidence demonstrating that the beating did occur is relevant to the jury's assessment of the officers' credibility. Whether Mr. Moody was injured, the extent of his injuries, and the location of his injuries are all relevant to whether the beating occurred. The testimony of EMT Melissa St. Fleur is obviously relevant and should be admitted.

     V.    <u>Internal NYPD Memoranda Concerning the Incident and/or Sgt. Talvy should be Admitted.</u>

The five internal NYPD memoranda concerning the incident or Sgt. Talvy's record should be admitted. The documents are not hearsay under Fed. R. Evid. 803(8), as they are public documents that set out "the office's activities," "a matter observed while under a legal duty to report…" and "factual findings from a legally authorized investigation." As required by Fed. R. Evid. 803(8)(b), "neither the source of information nor other circumstances indicate a lack of trustworthiness." The defendants can hardly argue to the contrary as the NYPD is the source of information. The "factual findings" admissible under this hearsay exception include portions of investigatory reports that "state a conclusion or opinions" as long as "the conclusion is based on a factual investigation." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). As these reports consist of factual findings and conclusions or opinions drawn from factual investigation, they are admissible. In addition, reports about the NYPD's investigation of the

underlying incident are relevant, and their relevance is not substantially outweighed by the

dangers of undue prejudice, waste of time, or jury confusion, for the reasons outlined above in

Sections I and II. *See e.g. Jones v. City of New York*, 2002 U.S. Dist. LEXIS 2052 (S.D.N.Y.

Feb. 11, 2002) (holding that evidence of the "existence and substance of the investigations

conducted by the N.Y.P.D., Internal Affairs Bureau, and the Bronx County District Attorney's

Office" was admissible because such evidence was " highly relevant" and further that, "[t]he jury

is entitled to know whether the city agencies received and responded to the allegations made by

Jones. Moreover, the breadth and depth of the investigation might be relevant to whether his

allegations were taken seriously and investigated fully").

VI.     Officers' Grand Jury Testimony is Admissible for Purposes of Impeachment.

Plaintiffs do not seek to admit the prior sworn testimony of the defendant officers during

the grand jury proceedings in the criminal case against Freddy Moody in their case in chief, but

reserve the right to use such testimony as impeachment. Defendants concede that such a use is

permissible. *See* Defendants' Memorandum of Law, p. 16.

VII.    Officer Memo Book Entries are Admissible

The memo books of defendant officers either contain notations made by the officers

about their assignments on the night of the incident and information about the arrests both

Freddy Moody and the plaintiffs, or are silent about these facts. As admissions of a party the

written statements in the memo books are not hearsay and are admissible under Fed. R. Evid.

801(d)(2). As they contain information about the arrests of Mr. Moody and plaintiffs, the

statements contain relevant evidence. Moreover, the absence of any information in the memo

books, given a duty to report, is a relevant fact for the jury to consider. Whether their contents

are cumulative depends on the testimony of defendants at trial; plaintiffs do not intend to introduce the memo books purely to present cumulative evidence.

### VIII.   Summaries and Logs Created by IAB and CCRB Should be Admitted

For the reasons outlined above in Sections I and II, information gathered by the IAB and CCRB and evidence of those investigations is highly relevant, and that probative value is not substantially outweighed by the risk of undue prejudice. Defendants' repeated argument that the jury should not be alerted to the fact that the IAB and CCRB conducted investigations falls flat because that evidence is highly probative of the collateral objective of defendant officers in arresting and prosecuting the plaintiffs, in addition to being generally relevant to their false arrest and excessive force claims. *See Williams v. McCarthy* 2007 U.S. Dist. LEXIS 79151 at *15; *Jones v. City of New York*, 2002 U.S. Dist. LEXIS 2052, cited *supra*.

### IX.   Recorded Interviews by CCRB and IAB/Audio Recordings of Radio Transmissions Should be Admitted

Recorded interviews of the defendants are not hearsay and are admissible as party admissions under Fed. R. Evid. 801(d)(2). Whether the recorded statements are cumulative depends on the testimony of the officers at trial; moreover, should the defendants testify any recorded statement that differs from the defendants' testimony at trial is admissible as evidence in addition to being appropriate impeachment material. Should any of the defendants be unavailable at trial, their recorded statements would also be admissible. Thus, the recorded statements of defendants should be admitted.

In regards to the recorded statements of non-party witnesses, these prior statements should be permitted for impeachment purposes.

Plaintiffs object to defendants' request that the CCRB and IAB statements be referred to generically as "previous sworn statements." For the reasons outlined in Sections I, II, V, and VIII

above, the fact that these investigations were conducted is relevant and should not be concealed from the jury.

### X.   NYPD Patrol Guide and Other Written Directives Should be Admitted

NYPD Patrol Guide provisions and written policies and procedures concerning arrests, use of force, observers at the scene of police incidents, and force monitoring should be admitted into evidence because they are relevant. In regards to their excessive force claim, plaintiffs must prove that the amount of force used by Sgt. Talvy and defendant officers was not objectively reasonable in light of the facts and circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In determining whether use of force was reasonable, it is necessary to consider "'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). NYPD policies regarding the use of force, appropriate reactions to observers at the scene of police incidents, and force monitoring, as well as the officer's knowledge of such policies and/or training with regard to them, are part of the "totality of the circumstances" and are all relevant to determining whether Sgt. Talvy's actions at the time that he used force against the plaintiffs was reasonable. *See Torres v. City of Madera*, 524 F.3d 1053, 1057 (9th Cir. 2008) (finding the nature of an officer's training relevant to the reasonableness determination); *Smart v. City of New York*, 2009 U.S. Dist. LEXIS 30241 *22 (S.D.N.Y. Mar. 30, 2009) (noting that plaintiff alleged that officer used force in violation of an NYPD Patrol Guide provision in denying defendant' motion for summary judgment regarding an excessive force claim). In addition, as the defendants intend to call an expert witness who was previously employed by the NYPD to testify regarding whether Sgt. Talvy's use of force was reasonable, documents regarding NYPD policy are relevant to evaluating his testimony and opinion.

The cases cited by defendants are inapplicable here and do not suggest that NYPD procedures and policies that are directly relevant to the conduct in question should not be admitted at trial. In *Greenidge v. Ruffin*, 927 F.2d 789, 791-92 (4th Cir. 1991), officers approached a car at night without using flashlights and when they opened car door and saw an occupant of the car reaching for an object, used force by firing a shot. The plaintiffs in *Greenidge* sought to admit evidence that officers violated police procedure in failing to use flashlights *prior* to the use of force as they approached the car. The Court held that police procedures regarding the use of flashlights were properly excluded because "reasonableness" should be calculated "*at the moment*" that force was used, and that therefore "events which occurred before [the officer] opened the car door and identified herself to the passengers are not probative of the reasonableness of [the officer's] decision to fire the shot." Defendants' citation to *Romero v. Board of County Comm'rs*, 60 F.3d 702 (10th Cir.1995) is similarly unconvincing-- in that case an officer encountered the plaintiff, whom he believed to be intoxicated, on the side of the road in a vehicle and told the plaintiff to wait in his car until another officer was able to respond to the scene. One half hour later the plaintiff allegedly got out of his car, approached the officer with a knife, swiped the knife across the officer's stomach, and then refused to drop the knife and charged the officer, who shot the plaintiff. Plaintiffs sought to rely on evidence that police protocol required the officer to arrest the plaintiff upon finding him on the side of the road, and that had the officer followed that protocol, he would not have been attacked thirty minutes later. The Court held that "evidence that [the officer] failed to arrest and handcuff [the plaintiff] prior to the threat is not relevant to the reasonableness of [the officer's] decision to shoot." *Id*. at 705. The Court further determined that a violation of the handcuff policy did not give rise to a §1983 claim.

This case is incredibly different from both *Greenidge* and *Romero*. Here plaintiffs do not seek to introduce evidence that the defendant officers violated police policy *before* the use of force and created a dangerous situation, but instead seek to introduce evidence of police procedures that relate to the defendants' decisions *at the moment* that the defendants used force. Evidence of those procedures is relevant to determining whether the defendant officers' use of force was reasonable in light of the totality of the circumstances.

*Woods v. Jefferson County Fiscal Court*, 2003 U.S. Dist. LEXIS 605 (W.D. Ky. Jan. 8, 2003), also cited by defendants, dealt not with whether evidence of police procedures should be presented to a jury, but with whether an issue of material fact had been created for purposes of summary judgment. The *Woods* Court did state, "Whether an officer followed or violated police department policy and guidelines is not relevant under *Graham*," but the Court explained this statement in a corresponding footnote, stating, "[the plaintiff] alleges that [an officer] received a written reprimand for violation of a departmental policy of the [Police Department] governing use of force…However, the receipt of a written reprimand for a violation is not conclusive to whether or not [the plaintiffs'] Fourth Amendment rights were violated. More important, it does not necessarily create an issue of fact." Because the *Woods* Court was not determining whether police policy was relevant and admissible at trial before a jury to determine reasonableness, but was determining whether a violation of policy created an issue of fact, its holding is not applicable in these circumstances. Similarly, in *Smith v. Freland,* 954 F.2d 343, 347-348 (6th Cir. 1992) the Court addressed not the admissibility of evidence at trial, but whether summary judgment was appropriately granted, and found that the fact that an officer violated local police policy did not require the Court to find a constitutional violation. This is certainly true, but it does not render evidence of the policies and practices of the NYPD *irrelevant* in determining

whether the constitutional standard of reasonableness was violated by Sgt. Talvy. Indeed, other courts have considered NYPD Patrol Guide provisions in determining whether Summary Judgment could be granted. *See e.g. Smart v. City of New York*, 2009 U.S. Dist. LEXIS 30241 *22 (S.D.N.Y. Mar. 30, 2009) (noting that plaintiff alleged that officer used force in violation of an NYPD Patrol Guide provision and denying summary judgment).

Finally, for the reasons outlined in Section II above, references to a violation of the patrol guide, like the introduction of the CCRB findings regarding misconduct, does not pose an undue risk of confusing the jury. The policies and practices of the NYPD are relevant, any risk of prejudice can be eliminated by an appropriate jury instruction, and the short amount of time required to explain to the jury that the Patrol Guide is not equivalent to the constitutional standard does not create such a risk of undue delay or confusion of issues that those risks substantially outweigh the high probative value of the proposed evidence.

Thus, as NYPD Patrol Guide provisions and written policies and procedures concerning arrests, use of force, observers at the scene of police incidents, and force monitoring are relevant to whether the defendant officers' use of force was objectively reasonable given the totality of the circumstances, as well as relevant to evaluating the opinion of the defendants' expert, the evidence should be admitted.

XI.   The Consent Decree in Black v. Codd Should be Admitted

The consent decree in *Black v. Codd*, 73 Civ. 5283 (S.D.N.Y. June 1, 1977), should be admitted for the reasons outlined in Section X. In the Consent Decree, the NYPD and the City of New York stipulated that:

> It is the policy of the New York City Police Department and the defendants that when a person (or persons) is detained, stopped or arrested in public areas, a person or persons not involved in the conduct for which the first person is stopped or arrested may remain in the vicinity of the stop or arrest as an onlooker or

onlookers, subject to the safety of the person stopped, the third persons, the general public, and officers of the Police Department, and to the provisions of P.L. § 195.05.

The order goes on to provide explicit rules for the treatment of bystanders. Like the Patrol Guide and other documents containing NYPD policy and procedure regarding bystanders, the consent decree is relevant to determining whether Sgt. Talvy's actions were reasonable under the circumstances, and relevant to evaluating the testimony of defendants' proposed expert, who will testify regarding whether the defendants' actions were reasonable.

*Kaufman v. New York*, 1992 U.S. Dist. LEXIS 14049, *7-8 (S.D.N.Y. Sept. 16, 1992) does not, as defendants argue, hold that the stipulation in *Black v. Codd* is inadmissible in other actions. In *Kaufman* plaintiffs attempted to admit the Consent Decree against the Transit Authority, whom the *Kaufman* Court noted was not a party to *Black v. Codd*. Moreover, the *Kaufman* Court found that the Consent Decree was inadmissible for purposes of proving a "custom or policy" of bystander arrests, because the existence of the Consent Decree was not proof that the policy in the Consent Decree had been violated. *Id*. In this case the Consent Decree is simply offered to show that the policy exists, not to attempt to prove that the policy has been violated as a custom or policy. Indeed, the Court considered the Consent Decree in *Black v. Codd* in denying the City's Motion for Summary Judgment in *Tonge v. Kelly*, 1992 U.S. Dist. LEXIS 20477 (E.D.N.Y. Dec. 23, 1992).

Nor is use of the Consent Decree prohibited under Fed. R. Evid. 408. While evidence of a settlement is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a

contradiction," Rule 408(b) states "the court may admit this evidence for another purpose." Here the Consent Decree is not being admitted to prove the validity or amount of the claim in *Black v. Codd,* but is being introduced to show the policy of the NYPD and the City of New York in regards to bystander arrests. It is therefore admissible.

XII.    <u>Expert Reports/Resumes May be Used for Impeachment Purposes</u>

Plaintiffs do not seek to introduce expert reports or resumes in their case in chief. Plaintiffs reserve the right to use expert reports or resumes to refresh recollection or to impeach. Regarding patient records, notes, and letters authored by the plaintiffs' medical professionals, defendants have not identified which if any portions of those records, which defendants also list as an exhibit in the Joint Pretrial Order, defendants seek to exclude. Plaintiffs should be permitted to admit all portions of those records that are relevant and are either not hearsay or fall within a hearsay exception.

XIII.    <u>Defendant-Officers' Written Oaths Should be Admitted</u>

Defendants' oaths to "faithfully discharge the duties" of police officers in the NYPD are relevant to the plaintiff's claims for the reasons outlined in Sections X and XI, above, as they are relevant to whether the defendants acted reasonably in using force against the plaintiffs. In addition, as defendants have sworn an oath to follow policies that the evidence demonstrates they did not follow, the oaths assist the jury in assessing the defendants' credibility as witnesses. As the documents are relevant they should be admitted.

XIV.    <u>Plaintiffs Do Not Seek to Admit Evidence Regarding the City's Indemnification of Defendants Unless it Becomes Necessary to Offset Prejudice Caused by Evidence Presented by Defendants</u>

Plaintiffs do not intend to elicit evidence of the City's indemnification of defendants. However, plaintiffs reserve the right to seek to introduce this evidence should any of the defendants suggest through testimony or other evidence that they lack financial resources

### XV.    Plaintiffs do not Intend to Introduce Other Contested Evidence

Plaintiffs do not intend to argue that defendant officers had knowledge that plaintiffs had brought lawsuits against the NYPD and/or its officers and officials prior to the night at issue, though they do intend to introduce evidence that the plaintiffs told NYPD officers, including Sgt. Talvy, that they were lawyers.

Plaintiffs do not intend to mention the "central park jogger" case and continue to assert, for the reasons outlined in their Memorandum of Law in Support of Plaintiff's Motions *in Limine* to Exclude Certain Evidence at Trial, that neither party should be permitted to admit evidence about the names of plaintiffs' clients or the specific nature of their clients' cases. Plaintiffs do intend to introduce evidence that the plaintiffs are lawyers and were on their way to a legal meeting regarding a case when they observed officers assaulting Mr. Moody.

### CONCLUSION

For the foregoing reasons, plaintiffs submit that the defendants' Motions in Limine should be denied.


Dated:       New York, New York
             April 18, 2012

                                        Jonathan C. Moore
                                        Elizabeth C. Logemann
                                        BELDOCK LEVINE & HOFFMAN LLP
                                        99 Park Avenue
                                        New York, New York 10016
                                        (212) 490-0400
                                        *Attorneys for Plaintiffs*