

**THE CITY OF NEW YORK**

**MICHAEL A. CARDOZO**
*Corporation Counsel*

**LAW DEPARTMENT**
100 CHURCH STREET, Rm. 3-177
NEW YORK, NY 10007

**ARTHUR G. LARKIN**
Senior Counsel
Phone: (212) 788-1599
Fax: (212) 788-9776
alarkin@law.nyc.gov

April 26, 2012

**BY E-MAIL**

Hon. Allyne R. Ross
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>Warren v. City of New York, et al.</u>, 08-CV-3815 (ARR) (RER)

Your Honor:

    We write briefly in response to plaintiffs' letter of yesterday's date, which seeks to admit into evidence the defendant officers' prior CCRB complaint histories and the CCRB finding that Lt. Talvy used excessive force and discourteous language during this incident. At the April 20, 2012, conference, the court clearly ruled that any evidence concerning these matters would not be admitted, and we submit that the court's ruling was correct in all respects.

    With regard to the CCRB finding that Lt. Talvy used excessive force against Michael Warren, the court concluded that "there is a difference between constitutional standards and internal procedures and I think that can confuse the jury. I don't want a trial about what that difference is." (4/20 Tr., at 64, 68-72 & 70:9-14, excerpts attached) Courts within and outside the Second Circuit generally agree. In *Salim v. Proulx*, 93 F.3d 86 (2d Cir. 1996), the court rejected the argument that the defendant officer's alleged violations of NYPD procedures, "such as failing to carry a radio or call for back-up, and also for failing to disengage when … other [persons] entered the fray" where the officer was struggling with the plaintiff, were sufficient – or even relevant – to establish a constitutional violation. The court found that the "reasonableness inquiry depends <u>only</u> upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force," not whether he followed internal NYPD procedures. *Id*. at 92 (emphasis added). *Salim* is not distinguishable on the grounds that the force used in that case was "deadly force," as the courts recognize that deadly force is analyzed according to the same "objective reasonableness"

standard employed in all other force cases. *See generally Scott v. Harris*, 550 U.S. 372, 382-83 (2007).

Courts in other jurisdictions have reached the same conclusion that the Second Circuit reached in *Salim*. *See Greenidge v. Ruffin*, 927 F.2d 789, 791-92 (4th Cir. 1991) (violation of procedure in failing to call for backup or use a flashlight irrelevant to excessive force claim); *Woods v. Jefferson City Fiscal Court*, 2003 U.S. Dist. LEXIS 605 (W.D. Ky. Jan. 8, 2003) (in excessive force lawsuit, "whether an officer followed or violated police department policy or guidelines is not relevant" under the constitutional standard) (citing *Graham v. Connor*, 490 U.S. 386 (1989)); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) ("under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force …. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983"); *Romero v. County of Lake*, 60 F.3d 702, 705 (10th Cir. 1995) ("violations of state law and police procedure do not give rise to a 1983 claim"); *Galapo v. City of New York*, 95 N.Y.2d 568, 574-75 (2000) ("The Patrol Guide is an internal manual – nearly 1,500 closely printed pages – containing thousands of rules, procedures and policies adopted by the Police Commissioner for the governance, discipline, administration and guidance of the Police Department …. It is not a body of law or regulation establishing clear legal duties that should serve as a basis for civil liability of municipalities").

With regard to the defendants' record of prior CCRB complaints, we submit that plaintiffs' purported justification for this evidence is insufficient. Again, after considering the matter at the April 20, 2012, conference, the court ruled that this evidence would not be admitted because it constitutes "pure propensity evidence" (4/20 Tr., at 73:11), and we submit that this ruling is correct. Plaintiffs assert that the record of prior complaints should be admitted in order to demonstrate the officers' alleged motive to lie about what happened in the incident, or to show malice. Plaintiffs assert that the officers likely feared investigation and/or other internal discipline if they were found to have used excessive force, or to have falsely arrested, the Warrens: "That these investigations [by IAB and CCRB] were made demonstrates to the jury that the officers had something to fear." (Plaintiff Ltr. 4/25, at page 4)

But plaintiffs' own complaint alleges the opposite, viz., that "drug enforcement units, in this case SNEU [the unit to which Talvy and the other defendants were assigned], are encouraged by their supervisors and/or tacitly allowed by the NYPD, … physically to brutalize suspects and arrestees without consequence – i.e., *without fear* of reprimand, discipline or even retraining by the department." (DE 27 [Amended Complaint], ¶ 107(a), at page 17 (emphasis added)) The fundamental inconsistency in plaintiffs' position on this issue underscores the real purpose for which they seek to admit prior CCRB complaints: To show that the officers have used excessive force before, and therefore must have done so on this occasion as well. The evidence is not admissible for this purpose, however, *see* Fed. R. Evid. 404(b), as the court already has ruled.

2

We have not addressed all of the issues that plaintiffs raise in their letter but will be prepared to address all other matters at tomorrow's conference.

Respectfully submitted,

/s/
Arthur G. Larkin (AL 9059)
Assistant Corporation Counsel

AGL/m
Attachments
cc:     All Counsel

1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -  X

MICHAEL WARREN and            :      10-CR-473
EVELYN WARREN,
                              :
         Plaintiff                   United States Courthouse
                              :      Brooklyn, New York
    - against-
                              :      April 20, 2012
THE CITY OF NEW YORK,                11:30 o'clock a.m.
Et al.,                       :

         Defendants.          :

- - - - - - - - - - - - - -  X


                      TRANSCRIPT OF CONFERENCE
                 BEFORE THE HONORABLE ALLYNE R. ROSS
                    UNITED STATES DISTRICT JUDGE.


APPEARANCES:

For the Plaintiffs:           JONATHAN C. MOORE
                              Beldock, Levine & Hoffman, LLP
                              99 Park Avenue
                              Suite 1600
                              New York, NY 10016

For the Defendants:           ARTHUR G.  LARKIN
                              KIMBERLY CONWAY
                              Office of Corporation Counsel
                              Law Department
                              100 Church Street
                              New York, NY 10007


Court Reporter:               Charleane M. Heading
                              225 Cadman Plaza East
                              Brooklyn, New York
                              (718) 613-2643

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

64

1  eventually has claims favor, but that having been said, I
2  think under a 403 analysis, I would certainly exclude that
3  document B.
4              MR. MOORE:  I'm sorry, Judge.  I'm not following
5  what document you're referring to.
6              THE COURT:  Okay.  This is Exhibit B to --
7              MR. LARKIN:  To our brief, Your Honor?
8              THE COURT:  Right.  Defendant's motion.
9              MR. LARKIN:  That was an excerpt from the CCRB's
10 findings, the closing memorandum.
11             MR. MOORE:  What exhibit is that?
12             THE COURT:  Exhibit B.
13             MR. LARKIN:  Right.  I don't even know that
14 Mr. Moore designated that particular document as an exhibit,
15 Your Honor, but what was designated was other documents that
16 set forth the findings of the CCRB.
17             I wanted to illustrate for the Court what those
18 findings were because they're set forth in that exhibit B
19 which is the closing memorandum where the CCRB finds that
20 there was discourtesy.
21             THE COURT:  Okay.  This is going to be easier.
22 Mr. Moore, what did you want to get into evidence?
23             MR. MOORE:  With respect to --
24             THE COURT:  What document?
25             MR. MOORE:  -- the CCRB?  You mean the prior

1 limine motion.

2 THE COURT: It's NYC 515 and 516, Exhibit I to
3 defendants motion.

4 MR. MOORE: I've got to tell you, I don't see that.

5 THE COURT: There are several documents that are in
6 Exhibit I and this is about the third one.

7 MR. MOORE: I'm sorry. It's the third document.
8 Okay. That's what I thought it was.

9 I think that document and the report that is
10 referred to in Exhibit B in the memorandum of law in support
11 of defendant's motion in limine should both be admissible in
12 evidence because I think the jury is going to be asked. The
13 test here is whether the officers' conduct was objectively
14 reasonable. I mean that's the Fourth Amendment standard.

15 It's not whether Talvy thought it was or whatever.
16 They have to measure the conduct of what happened here by some
17 objectively reasonably standard and I think this, I think the
18 findings of the CCRB set forth evidence with respect to what
19 an objectively reasonable officer should have done which is --

20 THE COURT: My understanding, and you didn't dispute
21 it or at least whoever wrote your brief didn't dispute it,
22 that the CCRB findings relate to internal codes and procedures
23 about what cops ought to do and not to the constitutional
24 standard, and there was not, that was actually acceded to in
25 your brief. I don't know that you wrote your brief, but --

1    MR. MOORE:  Well, I know there's that argument, but
2    I think it still goes to the motion of reasonableness of their
3    conduct at the time and whether they are, they're internal
4    procedures they're applying are procedures that are based upon
5    their view of what the constitution permits, so I mean you're
6    really talking --
7         THE COURT:  No.  No.  There are a lot of things that
8    are not constitutional that are internal procedures.
9         MR. MOORE:  Not with respect to the use of force
10   though.
11        If you look at the use of force --
12        THE COURT:  Well, even with respect to the use of
13   force and the fairly discursive material in the lengthy
14   report, they're talking about you've got to use pepper spray
15   before you use force.  I mean, that, the Constitution doesn't
16   say that.
17        MR. MOORE:  Well, I mean, to me, you know, that, the
18   patrol guidelines and the internal regulations of the Police
19   Department are based upon their analysis of what's
20   constitutional and what isn't in terms of the use of force.
21        Maybe for something else, it's not, but we're
22   talking about the use of force here and the finding that --
23        THE COURT:  But their own analysis relied on a
24   precedence that referred to the fact that pepper spray should
25   have been used first.  I mean, I'm just saying.  We can have a

1 full hearing about this.
2      I understand you're saying that with respect to
3 excessive force, something internal may be closer to the
4 constitutional standard than other internal regulations that
5 have nothing to do with constitutional standard, but as long
6 as nobody is calling an expert on police conduct.
7      The jury is going to have every single witness that
8 went, and many more that went into this determination.
9 They're going to be able to make up their own mind.  I am very
10 concerned that from everything I did read from the
11 authorities, there is a difference between constitutional
12 standard and internal procedures and I think that can confuse
13 the jury.  I don't want to have a trial about what that
14 difference is.
15      I think, you know, this is a very -- this is a case
16 with very live facts.
17      MR. MOORE:  Very --
18      THE COURT:  Live facts one way or another that a
19 jury is going to understand, whichever way they understand it,
20 and I don't think they're going to be overwhelmingly perplexed
21 about -- I mean, we're not on the cutting edge of, oh, my God,
22 is this right or is this wrong.  We just have totally
23 different versions of what happened.
24      So I don't see, for that reason, you know, at least
25 the lengthier one goes into not only findings of fact which

1  are really all that or, quote, factual conclusions.  You know,
2  it goes into excessive force which really preempts the jury.
3          For all of those reasons, I think as long as we're
4  keeping experts out, we ought to keep out all of the internal
5  stuff.  It's not that difficult.  I mean, it's black and white
6  facts.  I don't mean that in a racial way.  I mean it's --
7          MR. MOORE:  And that as well.
8          THE COURT:  But the jurors will think either A or B
9  and if they think A, they're going to come out one way and if
10 they think B, they're going to come out another way, and if
11 they're right depending on the view of the facts.
12         MR. MOORE:  I understand what the Court is saying.
13 I do think that it will be relevant for the jury to hear that
14 the police department, looking at these facts, giving Talvy
15 and all the other officers an opportunity, and particularly --
16         THE COURT:  I think it's very powerful.  I have to
17 say it's extremely powerful, but the fact that it's powerful
18 is not, in my view, a reason why they ought to have it in
19 light of all these other complications.
20         MR. MOORE:  Well, particularly in light of what
21 they're going to say which in that little preview to their
22 cross-examination that Mr., neither Mister and Mrs. Warren
23 cooperated with the investigation and --
24         THE COURT:  I think that's silly, but we'll discuss
25 that.

72

1       MR. MOORE:  But, I mean, you know, to suggest that
2  they really didn't, they, it wasn't really, they really didn't
3  have a real belief that what happened out there was wrong
4  because they didn't want to have to test it.
5       THE COURT:  No, I understand what you're saying,
6  because I think that's what kind of stuck in my throat when I
7  thought of the argument.
8       MR. LARKIN:  If there's, you know, what -- it's such
9  a small piece that if there's even a small possibility that it
10 might open the door to any of this, we won't even ask the
11 questions.
12      THE COURT:  Great.
13      MR. LARKIN:  It doesn't matter.
14      THE COURT:  Great.
15      MR. MOORE:  I'm sorry.  You're willing to ask --
16      THE COURT:  He won't ask the question.
17      MR. MOORE:  Oh, won't ask?
18      THE COURT:  And he will not.
19      MR. MOORE:  I thought you said you will ask the
20 question.
21      THE COURT:  No.  Won't.
22      MR. LARKIN:  I won't ask.
23      THE COURT:  So that's what I think about the CCRB
24 findings.
25      Okay.  Talvy's disciplinary records.

1            MR. MOORE:  It's not just Talvy, Judge.
2            THE COURT:  Everybody had disciplinary records and
3    there was forced monitoring information with respect to
4    Officer Talvy.
5            MR. MOORE:  Right.
6            THE COURT:  Whoever wrote your brief, and it may
7    well have been you, I thought it was very cleverly done, but
8    the bottom line is there is no relevance to any other cause of
9    action in the case whatsoever.
10           MR. MOORE:  I don't --
11           THE COURT:  It is pure propensity evidence except
12   with respect, and I understand the argument, to one prong of
13   abuse of process.  That is not even a strong prong, but if you
14   feel strongly that, candidly my reaction is that arguing abuse
15   of process, I think the retribution rationale was much
16   stronger.
17           MR. MOORE:  You mean the First Amendment --
18           THE COURT:  No, not the First Amendment.
19           MR. MOORE:  You mean the retribution --
20           THE COURT:  Yes, retribution.  I think that's much
21   stronger.
22           MR. MOORE:  That's a strong argument but also these
23   officers do have, you know, this was -- there was a time in
24   this case when this was, although there was also a <u>Monell</u>
25   claim, it's still in.  It's just been bifurcated.

1  THE COURT: Yes.

2  MR. MOORE: And the <u>Monell</u> claim we thought was very
3  strong because you had these officers who all had a history of
4  a lot of complaints.

5  Now, it's true some of them, almost none of them
6  were substantiated, but that doesn't necessarily mean they
7  have no relevance in a trial like this because as you know,
8  unsubstantiated doesn't necessarily mean, doesn't exonerate
9  the officer. It just means they can't tell one way the other.
10 It's usually his word or her word against the victim's word.

11 More importantly, the police department, at least on
12 paper takes these allegations seriously, has these programs to
13 put people on monitoring, and as a motivation for their going
14 forward with this prosecution, for being as aggressive as they
15 were, knowing that they were lawyers, knowing that there was a
16 likelihood that they were going to complain, particularly when
17 they got to the precinct when the crowd shows up and the City
18 Council people are there, they have to, they know in the back
19 of their mind that this is not going to end that night.

20 THE COURT: Let me simply say this. I know your
21 argument about the relevance to the abuse of process claim. I
22 don't understand relevance to any other claim.

23 MR. MOORE: No. It's only relevant to the --

24 THE COURT: Okay. Then the simple result is this.

25 If you want to pursue the abuse of process claim as

75

1   part of the package -- see, I cannot imagine crafting a
2   cautionary instruction successfully to purge the taint.  I
3   can't do it.  So if you want to try the abuse of process with
4   those complaints in it, I'll separate it.  We'll have a trial
5   after this.
6          MR. MOORE:  We've bifurcated and now we're going to
7   trifurcate?
8          THE COURT:  It's up to you.  You're welcome to leave
9   it in.
10         MR. MOORE:  I have to think about it.  That's the
11  first time I'm hearing that.
12         THE COURT:  No, but as far as I'm concerned, and
13  I've thought through this, it's one or the other.  I mean,
14  either you won't get it in on the abuse of process because the
15  abuse of process will be part of this case or you can get
16  whatever you want in on the abuse of process because it's
17  irrelevant and we'll just try it eventually.
18         MR. MOORE:  I don't think anybody has an interest --
19         THE COURT:  I'm sorry, but I can't think of any
20  other way to deal with it.
21         MR. MOORE:  I mean, they're not without some room
22  to, opportunity to say these were just complaints that were,
23  you know --
24         THE COURT:  Sorry.  They are so prejudicial, they
25  are completely irrelevant to any other claim except the abuse